IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 14-cr-00231-WJM-01

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. **RICKY GARRISON**,
2. JAMES TILLMON,
3. CHRISTOPHER MARTINEZ,
4. FRANCISCO AGUILAR,
5. SIMEON RAMIREZ,
6. CHRISTOPHER VIGIL,
7. TRAVIS EDWARDS,
8. DONDRAI FISHER,
9. ARCHIE POOLE,
10. LUIS RAMIREZ,
11. MELVIN TURNER,
12. SHAWN BEARDSLEY,
13. SIDNEY TAYLOR,
14. GREGORY WILLIAMS,
15. ROBERT PAINTER, and
16. LATOYA WIMBUSH,
      Defendants.

---

**DEFENDANT GARRISON'S MOTION OBJECTING TO MISJOINDER OF COUNTS
OR IN THE ALTERNATIVE TO SEVER COUNTS**

---

COMES NOW, the undersigned, on behalf of Ricky Garrison, and moves the court to order severance of Count 60, 70 and 71 from the trial of the remaining counts. As grounds therefore, it is stated as follows:

    **1.**    Mr. Garrison is charged in this case with 54 separate substantive counts. All but three of the counts relate to accusations concerning the distribution of cocaine, cocaine base and methamphetamine.

2.      Count 60 is an allegation regarding a violation of the Mann Act, Title 18, United States Code, Section 2421.  County 60 states, "On or about March 17, 2014, the defendant, RICKY GARRISON, did knowingly travel in interstate commerce the purpose of the travel was for the individual to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense."  The specific allegations as set forth to the grand jury and reflected in discovery is that the government believes Mr. Garrison is involved in a business separate from narcotics trafficking involving prostitution and that on the date charged in the state of Oklahoma, Mr. Garrison transported his girlfriend for the purposes of prostitution.

3.      Counts 70 and 71 of the indictment allege violations of Title 18, United States Code, Section 922(g)(1).   Both counts allege in pertinent part that, "On or about May 23, 2014, having been convicted of a crime punishable by imprisonment for a term exceeding one year did knowingly possess in and affecting interstate commerce, a firearm, . . ., said firearm having been shipped and transported in interstate commerce." This crime is commonly referred as a Possession of a Weapon by a Previous Offender (POWPO).   The gravamen of these specific offenses is the allegation that when the government executed a search warrant on the defendant's home they found two weapons at a time when he was a convicted felon.

4.      F.R.Crim.P. Rule 8(a) allows the Government to indict multiple offenses in a single indictment:

> **Joinder of Offenses**. The indictment or information may charge a defendant in separate counts with two or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

**5.**     F.R. Crim. P. 14 states in pertinent part:

Relief from Prejudicial Joinder

(a) Relief: If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

**6.**     The prevailing law in this circuit is set forth in *United States v. Kelley*, 635 F.2d 778 (10th Cir. N.M. 1980).  In *Kelley*, the defendant was charged with armed bank robbery, larceny of bank funds, and receipt of a firearm after having been convicted of a felony.  The defendant moved to sever the prior conviction count.  The Court ruled, that, "When Rules 14 and 8 are considered collectively, it is clear that although a defendant may obtain relief from a prejudicial joinder of offenses, joinder is proper when the offenses constitute 'parts of a common scheme or plan.' "  The *Kelley* court cited with approval the proposition that misjoinder, which, if it occurs, is in itself error citing *Baker v. United States*, 131 U.S.App.D.C. 7, 401 F.2d 958, 973 (1968) and *Ingram v. United States*, 272 F.2d 567, 570 (4th Cir. 1959).  See *United States v. Kelley*, 635 F.2d 778, 781 (10th Cir. N.M. 1980).  The *Kelley* court authorized the joint trial of the bank robbery counts with the receipt of a firearm after having been convicted of a felony count as it found that the theft of the firearms was accomplished in order to commit the bank robbery and as a result the three crimes were part of were part of a "common scheme or plan." *Id*.

**7.**     The decision to grant a severance is within the sound discretion of the trial court and its decision will not ordinarily be reversed in the absence of a strong showing

of prejudice. *United States v. Heath*, 580 F.2d 1011, (10th Cir. 1978), cert. denied, 439 U.S. 1075, 99 S. Ct. 850, 59 L. Ed. 2d 42 (1979).  A trial court may grant a severance if it appears that the defendant or Government is prejudiced by joinder. *United States v. Herring,* 582 F.2d 535 (10th Cir. 1978).

8.      In this case the Mann Act violation is not of the same or similar character as the controlled substance or POWPO allegations nor is it based on the same act or transaction, nor was it connected with nor constituted part of a common scheme or plan. The controlled substance and POWPO allegations all occurred in Colorado and the prostitution allegation arises out of Oklahoma.  The offenses are different in kind and there is no nexus between the two sets of criminal allegations.  Consequently, there is no authority under Crim. P. 8 to join the POWPO counts with the remaining counts.

9.      The POWPO charges again are not of the same or similar character as the controlled substance and Mann Act allegations nor are they based on the same act or transaction, nor were they connected with nor constituted part of a common scheme or plan.   The specific controlled substance and the Mann Act violations are alleged to have occurred between November 13, 2013 and March 20, 2014.   The POWPO charges arise from a search of the defendant's home on May 23, 2014, some two months later.  There is no evidence which links the two firearms in any manner with the controlled substance allegations.   Simply stated, there is no authority under Crim. P. 8 to join the POWPO counts with the remaining counts.

10.      Assuming arguendo the Court does find the charges were properly joined, severance under Crim. P. 14 is necessary to avoid unnecessary prejudice to the defendant.   The joinder of the three sets of very different crimes creates the clear

danger that jurors will convict Mr. Garrison of the controlled substance charges in part because they believe him to be a convicted criminal who prostitutes women.  The best example which demonstrates the prejudicial effect of joining these offenses in one indictment is to review how the government portrayed the arrest of Mr. Garrison and his codefendants in a press release designed to cause fear in the public of the defendants. See Attachment A.  This portrayal, even if not adopted in opening statement or closing argument by the government, is clearly one which will be drawn by the jury and is not one which is designed to produce a fair trial.

**11.**    A final alternative is possible.  The Court could trifurcate the trial in this case using the same jury.  The controlled substance charges would be presented first and verdicts reached.  After those verdicts are reached, if the government wished to proceed forward, the jury could then decide the Mann Act violation and then the POWPO charges in seriatim.  See eg. *United States v. Meeks*, 1998 U.S. App. LEXIS 31626 (10th Cir. Wyo. 1998); *Stinson v. United States*, 508 U.S. 36, 113 S. Ct. 1913, 123 L. Ed. 2d 598 (1993) (finding that bifurcation "strikes an appropriate balance between the concern about prejudice to the defendant and considerations of judicial economy"  and that by employing bifurcation "[t]he defendant's criminal past is not made known to the jury until after they have reached a verdict with respect to the other charges. At the same time, this procedure is considerably more efficient than conducting an entire new jury trial on the weapon possession charge at a later date."); *United States v. Nguyen*, 88 F.3d 812, 815-16 (9th Cir. 1996); see, however *United States v. Verner*, 2007 U.S. Dist. LEXIS 52002 (N.D. Okla. July 17, 2007) (which rejected the bifurcation approach, while noting its wisdom in some cases, as there were

other available means to avoid bifrcation)


Respectfully submitted,


s/James A. Castle
James A. Castle
Castle & Castle, P.C.
1544 Race Street
Denver, CO 80206
(303) 675-0500
f: (303) 329-5500

Mitchell Baker
Attorney for Ricky Garrison
1543 Champa, Suite 400
Denver, CO 80202
303.592.7353
mitchbaker@estreet.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of October, 2015, I electronically filed the foregoing **DEFENDANT GARRISON'S MOTION OBJECTING TO MISJOINDER OF COUNTS OR IN THE ALTERNATIVE TO SEVER COUNTS** using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

s/James A. Castle_____
James A. Castle

FBI — Two Metro Denver Drug Trafficking Organizations Dismantled by Metro Gang Task Force

**ATTACHMENT A**

9/22/15 4:30 PM





*Denver Division*

Home • Denver • Press Releases • 2014 • Two Metro Denver Drug Trafficking Organizations Dismantled by Metro Gang Task Force

## Two Metro Denver Drug Trafficking Organizations Dismantled by Metro Gang Task Force

*Well Over 300 Special Agents and Officers Arrested 28 Defendants for Drug Trafficking and Related Crimes During Early Morning Raids*

| | |
|---|---|
| **U.S. Attorney's Office** | **District of Colorado** |
| June 06, 2014 | (303) 454-0100 |

### Denver Division Links

**Denver Home**

Contact Us
- Overview
- Territory/Jurisdiction

News and Outreach
- Press Room | Stories
- In Your Community

About Us
- Our People & Capabilities
- What We Investigate
- Our Partnerships
- Denver History

**Wanted by the FBI - Denver**

**FBI Jobs**

WASHINGTON—Following a two-year criminal drug investigation, 54 defendants were named in four separate indictments charging various violations of the Controlled Substances Act, the U.S. Attorney's Office and the Metro Gang Task Force announced. Of the 54 defendants indicted, 28 were arrested during raids early this morning. There are 12 defendants who have not been apprehended and are actively being sought by law enforcement. Finally, there are 14 defendants who were already in custody prior to today's takedown.

In addition to the arrests, agents and officers this morning recovered two pounds of methamphetamine, approximately $40,000 in cash, and two firearms. These seizures were in addition to evidence found during the pendency of the two unrelated investigations. The investigations, which were initiated in March 2012, have resulted in the confiscation of 19,329.88 gross grams of methamphetamine, 614 gross grams of cocaine, 11.14 gross grams of heroin, 6.5 gross grams of MDMA (ecstasy), and 18,287.8 gross grams of marijuana. In addition, 13 guns, two cars, and $94,825, not counting items seized today.

"Make no mistake: as a result of these raids, Colorado is a safer place," said U.S. Attorney John Walsh. "Gangs that traffic in drugs also traffic in violence—whether by intimidation and fear or by actual force. And while the exact impact these arrests have on the drug trade is difficult to quantify, it is safe to say that the quantity of cocaine, crack, meth, and heroin available on the street have been substantially reduced as a result of today's operation."

"Today's operations are yet another illustration of how these criminal organizations will not be allowed to operate with impunity in our communities," said Special Agent in Charge Thomas P. Ravenelle of the FBI's Denver Division Field Office.

"Street gangs and drugs are a recipe for a significant percentage of violent crime in cities across the country," said Special Agent in Charge Kumar C. Kibble of HSI Denver. "The joint investigations we pursue with many of our Denver-area based law enforcement partners target the resources of gangs and drug dealers—finances, personnel, drugs and guns—to put them out of business."

The four indictments charged defendants from two separate and unrelated drug trafficking organizations (DTOs). The drugs being trafficked by both DTOs include: cocaine, crack, methamphetamine, heroin,

and marijuana. The investigations determined that some of the drugs being distributed throughout Metro Denver and along the Front Range came from Mexico. Some of the defendants who were responsible for trafficking these drugs are known for being involved with or having ties to others involved in violent crimes.

In the first DTO, known as Operation Gangster Disciples, 21 defendants were named in two separate related indictments returned by a federal grand jury in Denver on charges ranging from conspiracy to possess with intent to distribute and distribution of various drugs, including: cocaine, crack, methamphetamine, and heroin. The DTO was allegedly run by defendant Ricky Kamil Garrison. In addition to drug trafficking charges, Garrison faces a charge for travel with the purpose of engaging in interstate prostitution. Another defendant, James Tillmon, faces state charges for hit and run. Some of the defendants in this DTO are members or associates of the Gangster Disciples (GD) gang. All face various drug trafficking related charges. In addition to the drug charges, various members in these indictments also face charges, including felons in possession of firearms, and distribution of dangerous drugs within 1,000 feet of a school.

Those arrested today include:

FBI — Two Metro Denver Drug Trafficking Organizations Dismantled by Metro Gang Task Force                                     9/22/15 4:30 PM

ATTACHMENT A

- Francisco Aguilar, age 38, Denver
- Shawn Beardsley, age 45, Aurora
- Travis Edwards, age 52, Aurora
- Dondrai Fisher, age 41, Aurora
- Jesus Molina-Villarreal, age 45, Aurora
- Archie Poole, age 37, Aurora
- Francisco Ramirez, age 32, Aurora
- Simeon Ramirez, age 40, Denver
- Javier Segura-Cisneros, age 27, Aurora
- Khari Smith, age 37, Aurora
- Sidney Taylor, age 48, Denver
- Christopher Vigil, age 27, Denver
- Latoya Wimbush, age 29, Aurora
- Melvin Turner, age 38, Aurora

Those indicted by not yet arrested include:

- Christopher Martinez, age 33, Aurora
- Luis Ramirez, age 25, Thornton
- Gregory Williams, age 53, Arvada
- Name Unknown, age and residence unknown

Those already in custody include:

- Ricky Kamil Garrison, age 30
- James Tillmon, age 30
- Robert Painter, age 44

In the second DTO, known as the Gonzalez-Cepeva/Quintero Drug Trafficking Organization, a federal grand jury in Denver handed down two additional indictments, unrelated to the Gangster Disciples DTO. In the Gonzalez-Cepeva/Quintero DTO, 33 defendants were named in two separate related indictments on charges ranging from drug trafficking to engaging in a continuing criminal enterprise, conspiracy to import various drugs from Mexico, cash smuggling, running a drug controlled premises, possession of a weapon by an illegal alien, possession of a weapon by a felon, interstate transportation in aid of racketeering, and possession of a weapon in connection with a drug trafficking crime. The Gonzalez-

Cepeva/Quintero DTO was involved in the possession with intent to distribute and the distribution of methamphetamine, cocaine, and marijuana. The marijuana was allegedly imported to Colorado from California. The Gonzalez-Cepeva/Quintero DTO has individuals with ties to the 211 Crew.

Of the defendants indicted in this case, those arrested today include:

- Jose Castaneda-Zamora, age 38, unknown
- Noe Chavez-Gomez, age 20, unknown
- Debbi Martinez, age 24, Denver
- Rafael Quintero Gomez, age 21, unknown
- Jesus Montelongo-Talavera, age 24, Westminster
- Alberto Quintero, age 23, Aurora
- Juan Manuel Quintero, age 22, unknown
- Racquel Ramos-Sanchez, age 58, San Elizario, Texas
- Alberto Roel, age 45, Edinburg, Texas
- Robert Schaffer, age 65, Fort Collins
- Mark Singer, age 41, Colby, Kansas
- John Howard Smith, age 55, Denver
- Jessica Trejo-Huerta, age 23, Mexico
- Servando Gandara-Chavez, age 43, Denver

Those indicted by not yet arrested include:

- Jose Oceguera-Ramirez, age unknown, Mexico
- Tomas Gonzalez-Villalobos, age 43, Mexico
- Ramona Haro-Iniquez, age 44, Denver
- Marcus Marler, age 38, unknown
- Juan Montelongo, age 25, Westminster
- Sergio Salazar-Torres, age unknown, Mexico
- Raul Ramirez-Munoz, age 42, Mexico
- Hector Jesus Trejo-Huerta, age 27, Mexico

FBI — Two Metro Denver Drug Trafficking Organizations Dismantled by Metro Gang Task Force    9/22/15 4:30 PM

ATTACHMENT A

Those already in custody include:

- Antonio Gonzalez-Cepeva, age 25
- Elias Rafael Gonzalez-Cabrera, age 22
- Jesus Quintero, Jr., age 26
- Gabriel Sowell, age 38
- William Brewer, age 58
- Porfiria Alejandra Faias-Contreras, age 24
- Maria Farias-Contreras, age 23
- Jesus Quintero, Sr., age 46
- Carol Hawley, age 45
- Gina Salcido, age 42
- David Hall, age 56

If convicted, the defendants face penalties ranging from not less than five years in federal prison to up to life in federal prison, depending on the count of conviction. The defendants' criminal history, and the type and amount or weight of the drugs being trafficked are factors a judge will consider at sentencing.

The indictments contain an asset forfeiture allegation. The allegation states that upon conviction, the defendants shall forfeit to the United States any and all property, real or personal, involved in such offense, or any property traceable to the crime, such as vehicles or structures, and also including but not limited to a money judgment in the amount of proceeds involved in the offense.

This case was investigated by the Metro Gang Task Force. The Metro Gang Task Force is comprised of the Denver Division of the FBI, U.S. Immigration and Customs Enforcement's (ICE) Homeland Security Investigations (HSI), Adams County Sheriff's Office, Arapahoe County Sheriff's Office, Aurora Police Department, Colorado State Patrol, Commerce City Police Department, Colorado National Guard Counter Drug Unit, Denver District Attorney's Office, Denver Police Department, Jefferson County Sheriff's Office, the High Intensity Drug Trafficking Areas Program (HIDTA), the Lakewood Police Department, Douglas County Sheriff's Office and the Thornton Police Department. Agencies assisting the Metro Gang Task Force include the Westminster Police Department; the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF); and the U.S. Marshals Service.

Gangster Disciples is being prosecuted by Assistant U.S. Attorney Zachary Phillips. The Gonzalez-Cepeva/Quintero DTO is being prosecuted by Assistant U.S. Attorneys Stephanie Podolak and Brad Giles.

The charges contained in the four indictments are allegations, and the defendants named in these indictments are presumed innocent unless and until proven guilty.

This content has been reproduced from its original source.

Accessibility | eRulemaking | Freedom of Information Act | Legal Notices | Legal Policies and Disclaimers | Links | Privacy Policy | USA.gov | White House

FBI.gov is an official site of the U.S. government, U.S. Department of Justice

Close