IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 14-cr-00231-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.      RICKY GARRISON,
        a/k/a "G,"

      Defendant.

---

**GOVERNMENT'S *JAMES* PROFFER IN SUPPORT OF ADMISSION OF CO-CONSPIRATOR STATEMENTS PURSUANT TO RULE 801(d)(2) AS IT RELATES TO COUNT ONE OF THE INDICTMENT**

---

The United States, by United States Attorney John F. Walsh, through Assistant United States Attorney Zachary Phillips submit this proffer. The Government herein states the nature of and existence of the conspiracies reflected in Count One of the Indictment, along with the respective statements which are proffered herein. This proffer specifies the statements the Government intends to introduce in its case in chief including the written statements and audio recordings reflected in the proffer. All the written statements and audio recordings reflected as sources of statements have been previously disclosed to the defense.

**I.    Federal Rules and Case Law Concerning James Hearings and Proffers**

Under Tenth Circuit law, the District Court may satisfy the prerequisites for admission of a co-conspirator statement through either of two means: by holding a *James* hearing or by provisionally admitting the statement with the caveat that . . . the party offering [it] must prove the existence of the predicate conspiracy through trial testimony or other evidence. *United States v.*

*Owens*, 70 F.3d at 1118, 1123 (10th Cir. 1995). In either case, the court may consider the hearsay statement itself, as well as independent factors, in determining whether the Government has established a conspiracy by a preponderance of the evidence. *See* Fed.R.Evid. 801(d)(2); *see also United States v. Bourjaily*, 483 U.S. 171, 181 (1987); *and see United States v. Gonzalez-Montoya*, 161 F.3d 643, 649 (10th Cir. 1998). If it fails to hold a *James* hearing, the District Court must at least make preliminary factual findings on the record regarding the admissibility of the statements. *See United States v. Perez*, 989 F.2d 1574, 1580 (10th Cir.1993) (*en banc*).[1]

### A. **Proving the Existence of a Conspiracy**

To satisfy the requirements for admission under Rule 801(d)(2)(E), there must be substantial evidence, including the hearsay statements themselves, that a combination or conspiracy existed. *See United States v. Bucaro*, 801 F.2d 1230, 1232 (10th Cir. 1986); *United States v. Andrews*, 585 F.2d 961, 964 (10th Cir. 1978). "Substantial evidence" does not mean direct evidence. The combination or common plan may be inferred from circumstantial evidence. *Bucaro*, 801 F.2d at 1232; *Andrews*, 585 F.2d at 964.

In *United States v. Petersen*, 611 F.2d at 1330 n. 1 (10th Cir. 1979), the Tenth Circuit defined the required evidentiary showing as more than a scintilla. The court stated, "It is such evidence as a reasonable mind would accept as adequate to support a conclusion. Substantial

---

[1] It is interesting to note that no other Circuit makes such requirements on its district courts. In fact, the Fifth and Eleventh Circuits (birthplace of the *James* decision) have effectively abandoned pretrial determinations of admissibility and most district courts carry the defendant *James* Motion through trial. *United States v. Fragoso*, 978 F.2d 896, 899 (5th Cir. 1992) (*James* has never required a hearing outside the presence of the jury.); *United States v. Barshov*, 733 F.2d 842, 850 (11th Cir.1984) (I]f the district court concludes that a *James* hearing is not reasonably practical, it can admit the statements subject to the government later connecting them up with sufficient evidence.); *United States v. Hines*, 717 F.2d 1481, 1488 (4th Cir.1983) (This court has held that a district court need not conduct a pre-trial *James* hearing to determine admissibility.); *United States v. Baltas*, 236 F.3d 27, 34-35 (1st Cir. 2001) (Noting that if the district court determines it is not reasonably practical to require a showing to be made before admitting the evidence, [it] may admit the statement subject to being connected up. All in all, this is a matter committed to the broad discretion of the trial court.").

<u>evidence is less than the weight of the evidence</u>.  The possibility of drawing two inconsistent conclusions from the evidence . . . does not prevent the existence of the requisite elements from being supported by substantial evidence."  *Id.; accord, Bucaro*, 801 F.2d at 1232.

Circumstantial evidence can be, and often is, the only form of proof of a co-conspirator's participation in a conspiracy or of the existence of the conspiracy itself.   The courts will sustain a conviction based solely on circumstantial evidence.  *King v. United States*, 402 F.2d 289, 292 (10th Cir. 1968); *and see Glasser v. United States*, 315 U.S. 60, 80 (1942).   No formal or explicit agreement is necessary.   The Government need only show concerted action – a working together of two or more persons with a common design, purpose or understanding. *American Tobacco v. United States*, 328 U.S. 781, 809-810 (1945); *United States v. Dumas*, 688 F.2d 84, 86 (10th Cir. 1982).  Although "mere presence" by itself may not be sufficient to show membership in a conspiracy beyond a reasonable doubt, presence at the scene of a crime or close association with others involved in a criminal offense are factors that a jury and the Court may consider as circumstantial proof of membership. *United States v. Savaiano*, 843 F.2d 1280 (10th Cir.1988).

The Government, for purposes of this *James* Proffer, is <u>not</u> required to prove that the conspiracy was illegal or for unlawful purposes.  *See United States v. Martinez*, 825 F.2d 1451, 1452 (10th Cir. 1987).  As the Tenth Circuit explained in *Bucaro*, 801 F.2d at 1232 (quoting *Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 249 (1917)), it is not necessary . . . for the government to prove that the conspiracy was for unlawful purposes.  <u>The element of illegality may be shown by the [hearsay] declarations themselves</u>.   (Emphasis added.)

### B.   Connecting a Person to the Conspiracy

Once a combination of two or more persons is established, only light evidence is needed to connect a particular co-conspirator to the conspiracy.  *See Andrews*, 585 F.2d at 964.  *Accord, United States v. Dickey*, 736 F.2d 571, 583 (10th Cir. 1984) (only "slight evidence" is needed); *United States v. Moya-Gomez*, 860 F.2d 706, 758 (7th Cir. 1988); *United States v. Kennedy*, 564 F.2d 1329, 1342 (9th Cir. 1977); *United States v. Henderson*, 446 F.2d 960, 965 (8th Cir. 1971).

"[T]he jury may presume that a defendant is a knowing participant in the conspiracy when he acts in furtherance of the [conspiracy's] objective . . ." *United States v. Tranakos*, 911 F.2d 1422, 1430 (10th Cir. 1990); *Savaiano*, 843 F.2d at 1294 ("[p]articipation [in a conspiracy] may be inferred from the defendant's actions").  Allegations that the defendant played a "minor role" is not a defense.  *Id.*

### C.   A Co-Conspirator Liability for Acts and Statements During the Conspiracy

#### 1.   *A Conspirator is Accountable for All 801(d)(2)(E) Statements*

Once a defendant joins a conspiracy, earlier statements by his co-conspirators during the conspiracy — even before he joined it — are admissible against him.  *See United States v. Brown*, 943 F.2d 1246, 1255 (10th Cir. 1991); *United States v. Rocha*, 916 F.2d 219, 239-40 (5th Cir. 1990); *United States v. Murphy*, 852 F.2d 1, 8 (1st Cir. 1988); *United States v. Jackson*, 757 F.2d 1486, 1490 (4th Cir. 1985); *United States v. Brown*, 755 F. Supp. 942, 946 (D. Colo. 1991), aff'd, 930 F.2d 35 (10th Cir. 1991).

### 2.    *A Defendant is Held Accountable Even if He Did Not Know the Co-Conspirator/Declarant of the 801(d)(2)(E) Statement*

The Government is not required to prove that a defendant knew the co-conspirator who made an 801(d)(2)(E) statement.   A co-conspirator is not required to know all other members of the conspiracy scheme.   *United States v. Roberts*, 14 F.3d 502, 511 (10th Cir. 1993).   It is not necessary that all members of the conspiracy join it at the same time, and one may become a member of a conspiracy without full knowledge of the names, identities or locations of all of the other members.   *United States v. Roberts*, 14 F.3d 502, 511 (10th Cir. 1993).

### 3.    *A Co-Conspirator is Held Accountable Even if He Did Not Know of or Participate in All Means or Aspects of the Scheme*

The Government is not required to prove that an alleged co-conspirator agreed to, knew of or participated in every aspect, means or detail of the conspiracy.   *See United States v. Tranakos*, 911 F.2d 1422, 1430 (10th Cir. 1990); *United States v. Pack*, 773 F.2d 261, 265-66 (10th Cir. 1985); *United States v. Massa*, 740 F.2d at 636; *United States v. Read*, 558 F.2d 1225, 1230 (7th Cir. 1981) (defendant "need not agree to or participate in every step of the conspiracy"); *Escalante*, 637 F.2d at 1200. A co-conspirator "[does not] have to participate in every facet of the conspiracy scheme."   *United States v. Noble*, 754 F.2d at 1329, *cf. United States v. Horton*, 847 F.2d 313, 319 (6th Cir. 1988).

### 4.    *A Co-Conspirator is Accountable for the Acts of His Co-Conspirators Before and After the Point Where He Joins the Conspiracy*

One who joins a conspiracy takes on the same level of culpability as an originator of the conspiracy.   *Lowther v. United States*, 455 F.2d 657, 665 (10th Cir. 1972).   A joiner need not know all the details of the scheme or the identities of his co-conspirators.   *United States v. Sampol*, 636 F.2d 621, 676 (D.C. Cir. 1980).

5

A joiner is held to account for all of the statements and acts done by any other co-conspirator at any time, at least up until the point where the joiner abandons the conspiracy. *United States v. Overshon*, 494 F.2d 894, 896 (8th Cir. 1974). The defendant bears the burden of showing withdrawal from a conspiracy once it has been shown that she participated in it. *See United States v. Fox*, 902 F.2d 1508 (10th Cir. 1990). The defendant must show that he "took affirmative action to defeat or disavow the purpose of the conspiracy." *United States v. Garrett*, 720 F.2d 705, 714 (D.C. Cir. 1983); *See United States v. Gypsum Co.*, 438 U.S. 422, 464 (1978). The mere arrest of one or more co-conspirators does not terminate the conspiracy. *United States v. Thompson*, 533 F.2d 1006, 1010 (6th Cir.1976).

In a conspiracy, each member is criminally liable for all the reasonably foreseeable crimes committed during the course of and in furtherance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640 (1940); *See United States v. Galiffa*, 734 F.2d 306, 315 n.11 (7th Cir.1984) (Defendant complained unsuccessfully about being found guilty under *Pinkerton* and complicity theories of possession of marijuana with intent to distribute where evidence showed presence of defendant in vehicle used to transport marijuana, personal acquaintance with other members of the drug distribution ring, the presence of money found after arrest of the parties, the presence of large quantities of marijuana, and that the vehicle was rented in his name although he was merely a passenger at the time of arrest;   Court held the evidence was "more than sufficient").

**D.     Determining Whether A Statement is in Furtherance of a Conspiracy**

Prior to a statement being admitted under the co-conspirator exception to the hearsay rule, there must be some evidence showing that the statements were made "in furtherance" of the conspiracy. In determining what might constitute a statement "in furtherance" of the conspiracy,

6

the courts have consistently held that the statement need not actually advance the conspiracy, but need only promote its objectives. *United States v. Clark*, 18 F.3d 1337 (6th Cir. 1994). The court must examine the nature of the statement and the circumstances under which the statement was made. *United States v. Mayberry*, 896 F.2d 1117 (8th Cir. 1990); *United States v. Lewis*, 759 F.2d 1316 (8th Cir. 1985).

Specifically, the Tenth Circuit in *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993), stated:

> When inquiring whether a statement was made in furtherance of a conspiracy, we do not focus on its actual effect in advancing the goals of the conspiracy but on the declarant intent in making the statement. No talismanic formula exists for ascertaining whether a particular statement was intended by the declarant to further the conspiracy and is therefore admissible in accordance with the agency theory of conspiracy. To the contrary, this determination must be made by examining the context in which the challenged statement was made.

### 1. *A Statement Does Not Need to be Between Co-Conspirators to Be in Furtherance of the Conspiracy*

The proffered statement <u>may but need not be</u> one made by one conspirator to another. In *United States v. Williamson*, 53 F.3d 1500 (10th Cir. 1995), the statements were admissible when made <u>by</u> a member of the conspiracy and it was irrelevant whether the statement was made <u>to</u> a member of the conspiracy. For example, a statement made by a co-conspirator to a Government agent where the motive for making this statement was to further the conspiracy is admissible under Rule 802(d)(2)(E). *Williamson*, 53 F.3d at 1519; *United States v. Harris*, 944 F.2d 787 (10th Cir. 1991).

### 2. *Types of Statements that are in Furtherance of a Conspiracy*

In determining whether a statement is in furtherance of a conspiracy, a statement may be admissible even if subject to alternative interpretation if a reasonable interpretation of the

7

statement would be consistent with an intent to promote the conspiratorial objectives. *United States v. Marin*, 7 F.3d 679 (7th Cir. 1993); *United States v. Tarantino*, 846 F.2d 1384 (D.C. Cir. 1988).

A statement clearly may be admissible when made in response to questions. *United States v. Rastelli*, 870 F.2d 822 (2nd Cir. 1989); *United States v. Rahme*, 813 F.2d 31 (2nd Cir. 1987).

Similarly, a co-conspirator statement may also be admissible where it is characterized as "puffing," *United States v. Krevsky*, 741 F.2d 1090 (8th Cir. 1984); or "boasting," *United States v. Johnson*, 880 F.2d 413 (5th Cir. 1989); *United States v. Santiago*, 837 F.2d 1545 (11th Cir. 1988), if such "puffing" or "boasting" is used to facilitate the objectives of the conspiracy.

Finally, a co-conspirator statement is admissible even in situations where the declarant is uncharged, *United States v. Davis*, 766 F.2d 1452 (10th Cir. 1985); *United States v. Manaman*, 606 F.2d 919 (1979), and need not have been made in the presence of the defendant against whom it is being offered. *United States v. Cotton*, 646 F.2d 430 (10th Cir. 1981).

The following is an illustrative, but by no means exhaustive, list of those purposes for which appellate courts have held co-conspirators statements to be "in furtherance" of the conspiracy:

    1.    **Statements that, in any way, promote the objectives of the conspiracy. *United States v. Peveto*, 881 F.2d 844 (10th Cir. 1989).**

    2.    **Statements that facilitate drug transactions. *United States v. Christian*, 786 F.2d 203 (6th Cir. 1986).**

    3.    **Statements that outline the general history of the drug conspiracy. *United States v. Stratton*, 779 F.2d 820 (2nd Cir. 1985).**

    4.    **Statements that are intended to recruit potential co-conspirators or to otherwise induce the assistance of others in carrying out the objectives of the conspiracy. *Lujan*, 936 F.2d 406 (9th Cir. 1991). *United States v. Herrero*,**

        893 F.2d 1512 (7th Cir. 1990); *United States v. Jerkins*, 871 F.2d 598 (6th Cir. 1989); *United States v. Echeverry*, 759 F.2d 1451 (9th Cir. 1985); *United States v. Heinemann,* 801 F.2d 86 (2nd Cir. 1986).

5.    Statements that identify a co-conspirator, the role of that co-conspirator or the source of drugs in a drug conspiracy.  *Williamson,* 53 F.3d 1500; *United States v. Thompson*, 976 F.2d 666 (11th Cir. 1992); *United States v. Johnson*, 925 F.2d 1115 (8th Cir. 1991); *United States v. Smith*, 909 F.2d 1164 (8th Cir. 1990); *United States v. Mcgee,* 821 F.2d 234 (5th Cir. 1987); *Clark*, 18 F.3d 1337; *Cox*, 923 F.2d 519; *Peveto*, 881 F.2d 844; *United States v. Meeks*, 857 F.2d 1201 (8th Cir. 1988); *Mayberry*, 896 F.2d 1117; *Rahme*, 813 F.2d 31; *United States v. Gomez*, 810 F.2d 947 (10th Cir. 1987); *Herrero*, 893 F.2d 1512.

6.    Statements that explain important events in the conspiracy.  *United States v. Massa*, 740 F.2d 629 (8th Cir. 1984).

7.    Statements designed to give directions to facilitate the objectives of the conspiracy.  *Massa*, 740 F.2d 629.

8.    Statements designed to advise co-conspirators of the progress of the conspiracy and keep them abreast of conspiratorial activities.  *United States v. Smith*, 833 F.2d 213 (10th Cir. 1987); *United States v. Gibbs*, 739 F.2d 838 (3rd Cir. 1984); *United States v. Simmons,* 923 F.2d 934 (2nd Cir. 1991); *United States v. Heinemann, supra.*

9.    Statements intended to assure the listener of a conspirator ability to consummate a particular transaction.  *Echeverry*, 759 F.2d 541.

10.    Statements intended to control damage to the conspiracy.  *United States v. Van Daal Wyk*, 840 F.2d 494 (7th Cir. 1988); *United States v. Doerr*, 886 F.2d 944 (7th Cir. 1989).

11.    Statements that prompt the listener to respond in a way that facilitates carrying out the activities of the conspiracy.  *Rahme,* 813 F.2d 31.

12.    Statements to conceal the objective of the conspiracy.  *Doerr*, 886 F.2d 944.

13.    Statements intended to enhance a co-conspirator usefulness to the conspiracy.  *Tarantino,* 846 F.2d 1384.

14. **Statements designed to gain the trust of co-conspirators or potential co-conspirators, to reassure trustworthiness, or to allay suspicions or fears.** *Williamson*, 53 F.3d 1500; *United States v. McLernon*, 746 F.2d 1098 (6th Cir. 1984); *United States v. Posner*, 764 F.2d 1535 (11th Cir. 1985); *United States v. Mealy*, 851 F.2d 890 (7th Cir. 1988); *Gomez*, 810 F.2d 947.

15. **Statements to new or prospective members of a conspiracy that explain the conspiracy.** *United States v. Monroe,* 866 F.2d 1357 (11th Cir. 1989); *United States v. Turner,* 871 F.2d 1574 (11th Cir. 1989).

16. **Statements that set in motion acts which are an integral part of the conspiracy.** *United States v. Paris*, 827 F.2d 395 (9th Cir. 1987).

17. **Statements that reveal the existence of a conspiracy.** *Mayberry,* 896 F.2d 1117; *United States v. Garcia*, 994 F.2d 1499 (10th Cir. 1993); *United States v. Caliendo*, 910 F.2d 429 (7th Cir. 1990).

18. **Statements in a drug conspiracy that detail such things as price, method of payment, delivery amounts, or the like.** *United States v. Robinson,* 956 F.2d 1388  (7th Cir. 1992); *Cox*, 923 F.2d 519.

19. **Statements that indicate payments made or demands for payment to accomplish activities of the conspiracy.** *United States v. Esacove*, 943 F.2d 3 (5th Cir. 1993).

20. **Statements concerning the collection of drug debts.  This could include threats to kill any person owing money in a drug conspiracy.** *Meeks,* 857 F.2d 1201.

21. **Statements to co-conspirators or potential co-conspirators indicating potential investigation, apprehension or punishment.  These statements could include concerns about informants, threats or physical action taken against persons who would cooperate with law enforcement authorities.** *Simmons*, 923 F.2d 934; *United States v. Arias-Villanueva*, 998 F.2d 1491 (9th Cir. 1993); *United States v. McNeese,* 901 F.2d 585 (7th Cir. 1990); *United States v. Triplett*, 922 F.2d 1174 (5th Cir. 1991).

E. **The Order of Proof**

The Federal Rules of Evidence changed the long-standing common law practices concerning the admission of co-conspirator statements.  The determination of the admissibility of out-of-court declarations pursuant to Federal Rules of Evidence 801(d)(2), 803, or 804(b)(3) is a

10

question for the trial court to decide. *United States v. Jackson*, 627 F.2d 1198, 1218 (D.C. Cir. 1980). *See United States v. Lippner*, 676 F.2d 456, 463-464 (11th Cir. 1982). *See also Bourjaily, supra*.

The admissibility of co-conspirator hearsay is governed by Federal Rule of Evidence 104(a):

> Preliminary questions concerning the . . . admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination, [the court] is not bound by the rules of evidence except those with respect to privileges.

Rule 1101(d)(1) provides in similar fashion that the rules of evidence "do not apply" to "[t]he determination of questions of fact preliminary to admissibility of evidence . . . ." Accordingly, the Government, in "proving up" co-conspirator statements, and the Court, in making its admissibility determinations, are not bound by the rules of evidence, except concerning privileges.

The "preferred order" of proof for the admission of out-of-court statements through application of Rule 801(d)(2)(E) permits connecting up strategies, proffers, pretrial hearings or any reasonable combination of approaches.

## II.   THE FACTUAL BACKGROUND OF THE CASE

### The Facilitation of the Illegal Drug Trafficking Conspiracy

#### A.   *Duration of, Members of, and Type of Conspiracy*

##### 1.   **Duration of the Respective Conspiracy**

The evidence in this case will demonstrate that the conspiracy described in Count One began on or about the dates stated in the Indictment.

### 2. Members of the Conspiracy

The Government will show that the members of the conspiracy in Count One were Ricky Garrison, James Tillmon, Christopher Martinez, Francisco Aguilar, Simeon Ramirez, Christopher Vigil, Travis Edwards, Dondrai Fisher, Archie Poole, Luis Ramirez, Melvin Turner, Shawn Beardsley, Sidney Taylor, Gregory Williams, Robert Painter, Latoya Wimbush, and others not charged.

The proof at trial and this *James* proffer will show that each member played a specific role in the overall conspiracy. The indicted members and their respective roles are set forth below.

### 3. Type of Conspiracy

The conspiratorial organization, as is the case with most drug conspiracies, cannot be neatly categorized solely as a vertical organization or as a hub and spokes conspiracy. Instead, this conspiracy may be described as fluid with characteristics of both. *See Blumenthal v. United States*, 332 U.S. 539, 556 (1947) (conspiracies are not born full grown, but rather evolve over time.)

## B. Evidence Supporting the Conspiracy

### 1. *Categories of Evidence*

The evidence supporting the conspiracy will come from the following category of sources: (1) testimonial and other evidence presented by cooperating witnesses; (2) intercepted recorded telephone calls and text messages; (3) evidence derived from searches; (4) evidence derived from interviews and post-arrest statements.

Set forth below is the Government's attempt to succinctly summarize the vast quantities of proof in this case. As stated above, this proffer is not meant to be, nor is it, a complete recounting of all the government's proof.

## III. PROFFER UNDER FED. R. EVID. 801(d)(2)

**(Conspiracy to Distribute Cocaine, Cocaine Base, Heroin, and Methamphetamine)**

### A. Section 1: Government's Initial Proffer as to Conspiracy

Agents and officers assigned to the Metro Gang Task Force (MGTF) initiated an investigation into this organization in March of 2012. During the course of this investigation more than one Confidential Source (CS) was utilized and supplied information to law enforcement. During the course of this investigation the following people and their respective roles in the organization were identified as follows:

RICKY GARRISON was a very active drug distributor in the Denver metro area as well as having drug connections to other states. Ricky Garrison would receive his illegal narcotics from various suppliers to include Christopher Martinez, Travis Edwards, Simeon Ramirez, Francisco Aguilar, Christopher Vigil, James Tillmon and others. Ricky Garrison would often receive cocaine and redistribute the cocaine to numerous customers. Additionally, Ricky Garrison would often convert the cocaine into cocaine base which he would also redistribute. Further, Ricky Garrison would receive methamphetamine from various sources of supply which Garrison would redistribute. During the course of the conspiracy, Garrison also received methamphetamine which he would convert to ecstasy or "Molly" which he would redistribute. Further, during the course of the conspiracy, Ricky Garrison was found to be active in the distribution of heroin. Some of Ricky Garrison's sources of supply were also, at times, sourced

13

by Ricky Garrison.   Christopher Martinez and James Tillmon are both examples of such a relationship.   The conspiracy investigation showed that when Garrison supplied Martinez, Tillmon or others, the customers of Garrison redistributed a large part of the supplied narcotics if not all of the narcotics.   Garrison had numerous drug customers.   Some of Ricky Garrison's customers included charged co-conspirators Gregory Williams, Sydney Taylor, Latoya Wimbush and Robert Painter.   Garrison had numerous other customers who were not charged as part of the conspiracy.   Throughout the conspiracy, all of the co-conspirators would exchange illegal narcotics for cash in order to gain a financial benefit.

JAMES TILLMON was both a supplier as well as a customer of Ricky Garrison during the course of the conspiracy.   Ricky Garrison and James Tillmon were actively involved in the distribution of cocaine, base cocaine, and methamphetamine during the course of the conspiracy. Customers of James Tillmon included, but were not limited to, Ricky Garrison, Archie Poole and Dondrai Fisher.

CHRISTOPHER MARTINEZ was actively involved in supplying and receiving numerous narcotics with Ricky Garrison.   Martinez was known to distribute cocaine, methamphetamine, and heroin during the course of the conspiracy.   Martinez distributed to Ricky Garrison as well as Melvin Turner and Luis Ramirez, who all re-distributed the drug they received from Christopher Martinez.

FRANCISCO AGUILAR supplied Ricky Garrison with cocaine during the course of the conspiracy.   The cocaine was usually powder cocaine, but it was also cooked into base cocaine and distributed to others by Ricky Garrison.

SIMEON RAMIREZ supplied Ricky Garrison with cocaine during the course of the conspiracy. The cocaine was usually powder cocaine, but it was also cooked into base cocaine and distributed to others by Ricky Garrison.

CHRISTOPHER VIGIL supplied Ricky Garrison with cocaine as well as methamphetamine during the course of the conspiracy. The methamphetamine was sometimes converted to ecstasy or "Molly" and the cocaine was at times cooked into cocaine base for redistribution by Ricky Garrison.

TRAVIS EDWARDS supplied Ricky Garrison with cocaine during the course of the conspiracy. Garrison would then redistribute the cocaine as cocaine powder or cocaine base. Additionally, Ricky Garrison would also supply Travis Edwards with cocaine when Edwards was short on supply.

DONDRAI FISHER was a customer of James Tillmon during the course of the conspiracy. Ricky Garrison and James Tillmon conspired together to supply Dondrai Fisher with both cocaine and methamphetamine during the course of the conspiracy. Dondrai Fisher then redistributed the illegal narcotics to his own customers.

ARCHIE POOLE was a customer of James Tillmon during the course of the conspiracy. Ricky Garrison and James Tillmon conspired together to supply Archie Poole with both cocaine and methamphetamine during the course of the conspiracy. Archie Poole then redistributed the illegal narcotics to his own customers.

LUIS RAMIREZ was a customer of Christopher Martinez during the course of the conspiracy. As part of the conspiracy, Christopher Martinez supplied Luis Ramirez with cocaine during the course of the conspiracy. Luis Ramirez then redistributed the illegal narcotics to his own customers.

MELVIN TURNER was a customer of Christopher Martinez during the course of the conspiracy. Christopher Martinez supplied Melvin Turner with heroin during the course of the conspiracy. Melvin Turner then supplied the heroin to Shawn Beardsley. In addition, Melvin Turner assisted Christopher Martinez in the distribution of methamphetamine and cocaine to various customers during the course of the conspiracy.

SHAWN BEARDSLEY received methamphetamine and heroin from both Melvin Turner and Christopher Martinez during the course of the conspiracy. Shawn Beardsley then redistributed the drugs to his own customers.

SIDNEY TAYLOR received both cocaine and cocaine base from Ricky Garrison during the course of the conspiracy. Sidney Taylor then redistributed the cocaine and cocaine base to his own customers.

GREGORY WILLIAMS received both cocaine and cocaine base from Ricky Garrison during the course of the conspiracy. Gregory Williams then redistributed the cocaine and cocaine base to his own customers.

ROBERT PAINTER received both cocaine and methamphetamine from Ricky Garrison during the course of the conspiracy. Robert Painter then redistributed the majority of the cocaine and methamphetamine to his own customers.

LATOYA WIMBUSH received both cocaine and cocaine base from Ricky Garrison during the course of the conspiracy.   Latoya Wimbush then redistributed the cocaine and cocaine base to her own customers.

The Government will show that throughout the course of the conspiracy, the defendants acted together in order to distribute illegal narcotics in the Denver metro area in order to gain financial benefit.

    **B.**    **Section 2:   Government's Proffer as to Specific Statements**:   see attached Exhibit "A."

Respectfully submitted this 6th day of July, 2016.

                JOHN F. WALSH
                United States Attorney


        BY:    *s/Zachary Phillips*
                ZACHARY PHILLIPS
                Assistant United States Attorney
                U.S. Attorney's Office
                1225 17th St., Suite 700
                Denver, CO. 80202
                Telephone (303) 454-0118
                Fax (303) 454-0401
                e-mail:   zachary.phillips@usdoj.gov
                Attorney for the Government

CERTIFICATE OF SERVICE

       I hereby certify that on this 6th day of July, 2016, I electronically filed the foregoing **GOVERNMENT'S *JAMES* PROFFER IN SUPPORT OF ADMISSION OF CO-CONSPIRATOR STATEMENTS PURSUANT TO RULE 801(d)(2) AS IT RELATES TO COUNT ONE OF THE INDICTMENT** using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

       *s/Maggie E. Grenvik*
       Maggie E. Grenvik
       Legal Assistant
       U.S. Attorney's Office
       1225 17th St., Suite 700
       Denver, CO   80202
       Telephone:   (303) 454-0100
       Fax:   (303) 454-0401
       e-mail:   maggie.grenvik@usdoj.gov