# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Criminal Case No. 14-cr-231-WJM

UNITED STATES OF AMERICA,

 Plaintiff,

v.

**1. RICKY GARRISON,**

 Defendant.

## ORDER DENYING MOTION FOR ACQUITTAL

  Before the Court is Defendant Ricky Garrison's Motion for Judgment of Acquittal Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or in the Alternative, Motion for New Trial Pursuant to Rule 33 of the Federal Rules of Criminal Procedure ("Motion for Acquittal"). (ECF No. 1307.) Garrison argues that a prejudicial variance requires the Court to reverse his conviction for conspiracy under Count 1 of the superseding indictment. The Government filed a response. (ECF No. 1316.) Although the Court granted Garrison an opportunity to file a reply brief (*see* ECF No. 1309), he did not file one.

  For the reasons explained below, the Court agrees with Garrison that there was a variance between Count 1 as charged and Count 1 as proven, but this variance did

not prejudice Garrison's substantial rights. His Motion for Acquittal is denied.[1]

## I. STANDARD OF REVIEW

"[T]he court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." *Id*. 29(c)(1). Garrison filed his Motion for Acquittal on March 15, 2017, thirteen days after the March 2, 2017 guilty verdict. (*See* ECF No. 1283.) His Motion is therefore timely.

In considering a motion for judgment of acquittal pursuant to Rule 29, the Court cannot weigh the evidence or consider the credibility of witnesses. *See Burks v. United States*, 437 U.S. 1, 16 (1978). Rather, the Court must "view the evidence in the light most favorable to the government and then determine whether there is sufficient evidence from which a jury might properly find the accused guilty beyond a reasonable doubt." *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982). The jury may base its verdict on both direct and circumstantial evidence, together with all reasonable inferences that could be drawn therefrom, in the light most favorable to the government. *See United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir. 1986). Acquittal is proper only if the evidence implicating the defendant is nonexistent or is "so meager that no

---

[1] Garrison makes no argument for a new trial under Rule 33 that is distinct from his arguments for acquittal under Rule 29. The Court denies Rule 33 relief for the same reasons that it denies Rule 29 relief, and the Court will not further discuss Rule 33 in this Order. This does not, however, prevent the Court from considering the Government's failure to prove to entire conspiracy as charged in Count 1 in the context of a motion for downward departure.

reasonable jury could find guilt beyond a reasonable doubt." *White*, 673 F.2d at 301.

## II. ANALYSIS

A.   **Count 1, As Charged**

Count 1 of both the original and superseding indictments charges Garrison and his fifteen co-defendants with

> conspir[ing] [between June 1, 2013, and June 4, 2014,] to distribute and possess with the intent to distribute, one or more of the following controlled substances: (1) more than 500 grams but less than 5 kilograms of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance; (2) more than 28 grams but less than 280 grams of a mixture or substance which contains cocaine base; (3) less than 100 grams of a mixture or substance containing a detectable amount of heroin, a Schedule I Controlled Substance; (4) less than 50 grams of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II Controlled Substance . . . .

(ECF Nos. 10, 1182.) At trial, the Government argued that Garrison was the hub in a hub-and-spoke conspiracy between the other fifteen defendants. (Trial Transcript ("Tr.") (ECF Nos. 1339–46) at 202–05, 234, 740, 747, 952–53.) Garrison argues that "the evidence introduced by the government, during trial, failed to prove this global conspiracy. Thus, the government's evidence varied from the charge as plead[ed] in Count 1." (ECF No. 1307 at 3.)

"A variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment." *Dunn v. United States*, 442 U.S. 100, 105 (1979). In the conspiracy context specifically, "[a] variance arises when an indictment charges a single conspiracy but the evidence presented at trial proves only the existence of

3

multiple conspiracies." *United States v. Carnagie*, 533 F.3d 1231, 1237 (10th Cir. 2008).

## B. Lack of Proof for Count 1, As Charged

The Court agrees with Garrison that the evidence presented at trial could not have supported a jury's conclusion, beyond a reasonable doubt, that a sixteen-person conspiracy existed as charged in Count 1. Most notably, the Government presented no evidence at all regarding five of Garrison's alleged co-conspirators (Defendants Beardsley, Fisher, Poole, Luis Ramirez, and Turner). Moreover, as to some Defendants, the Government presented no evidence of the so-called "rim" connecting the "spokes": "a *shared*, single criminal objective, not just similar or parallel objectives between similarly situated people." *United States v. Evans*, 970 F.2d 663, 670 (10th Cir. 1992) (emphasis in original). For example, Defendant Taylor bought drugs from Garrison solely for personal use, and the Government presented no evidence that the buyer-seller relationship between Taylor and Garrison was in any way interdependent (from Taylor's perspective) with any other Defendant. (Tr. at 347–53.) Indeed, it is not clear that Taylor was aware of any other Defendant's relationship to Garrison.

To be sure, sufficient evidence existed by which a jury could find smaller conspiracies beyond a reasonable doubt. In particular, Defendants Simeon Ramirez and Aguilar both testified that they worked together, and sometimes separately, to supply cocaine to Garrison on repeated occasions in multiple-ounce quantities (*i.e.*, far too large for personal use, *see* Tr. at 382)[2] and often with a cutting agent. (Tr. at

---

[2] There was, in any event, no evidence that Garrison himself was a cocaine user.

4

439–53 (S. Ramirez), 506–47 (Aguilar).)  Thus, a jury could reasonably conclude that Simeon Ramirez, Aguilar, and Garrison engaged in "an ongoing course of conduct . . . in order to achieve a common goal or purpose: to profit from the illicit distribution of cocaine."  *United States v. Edwards*, 69 F.3d 419, 431 (10th Cir. 1995).

Although there was no evidence that Defendant Vigil had any connection with Defendants Simeon Ramirez or Aguilar, he similarly testified that he supplied cocaine to Garrison on repeated occasions in multiple ounce quantities, often with a cutting agent. (Tr. at 649–80.)  Thus, a jury could conclude that Garrison conspired with Vigil to profit from cocaine distribution.  But, as compared to Count 1, "the government overdrew the indictment" in this case, leading to a variance.  *United States v. Harrison*, 942 F.2d 751, 756 (10th Cir. 1991).

### C. Lack of Prejudice to Substantial Rights

Nonetheless, a variance does not require this Court to acquit unless Garrison can show that it affected his "substantial rights."  *Id*. at 758.  "A defendant's substantial rights are not prejudiced merely because the defendant is convicted upon evidence which tends to show a narrower scheme than that contained in the indictment, provided that the narrower scheme is fully included within the indictment."  *Id*. (internal quotation marks omitted).  Thus, Garrison must show some sort of prejudice beyond the fact that the Government proved only smaller conspiracies.

Garrison alleges two potential forms of prejudice: the "spillover effect," and lack of notice.  (ECF No. 1307 at 5–8.)  The Court will address each in turn.

1. Spillover Effect

The so-called spillover effect refers to the possibility that a jury may find a particular defendant guilty of conspiracy by imputing to the defendant evidence of *smaller* conspiracies between *other* defendants. See, e.g., Carnagie, 533 F.3d at 1241 ("A variance can also prejudice a defendant's substantial rights if the evidence adduced against co-conspirators involved in separate conspiracies was more likely than not imputed to the defendant by the jury in its determination of the defendant's guilt." (internal quotation marks omitted)). To evaluate the possibility of a prejudicial spillover effect, the Court must evaluate three factors: (1) whether evidence of separate conspiracies impaired the jury's ability to evaluate each alleged conspirator's actions individually; (2) whether there is any evidence that the jury was confused by the variance; and (3) whether sufficient evidence existed to support a jury verdict encompassing the smaller conspiracies. *Id*.

This test, and the spillover problem generally, has no application here. No other alleged co-conspirator was on trial (all others pleaded guilty), and all of the evidence regarding potential conspiracies was evidence of *Garrison* allegedly conspiring with his co-defendants. The jury heard no evidence (and Garrison does not point to any) that could have been interpreted as a separate conspiracy solely between Defendants not on trial. Thus, Garrison could not have suffered prejudice on account of a potential spillover effect.

2. Lack of Notice

Garrison argues that his substantial rights were prejudiced because his counsel "could not fairly anticipate what the evidence would be a trial" and was therefore "left to

6

guess as to how [Count 1] was going to be proven." (ECF No. 1307 at 7.)  The Court disagrees.  As the Government has accurately summarized, Garrison's counsel received all the discovery to which it was entitled, received proffer statements regarding the testimony of cooperating co-defendants, received an extensive *James* proffer encompassing the telephone calls the Government intended to introduce as evidence, and knew which witnesses would be testifying well ahead of time.  (ECF No. 1316 at 7–8.)  Garrison's counsel might have been left wondering precisely how the Government planned to *argue* that its evidence showed interdependence between the members of the alleged conspiracy—and, as it turned out, the Government never really made an argument encompassing all sixteen Defendants.  But there is no question that Garrison knew what evidence the Government intended to put on and what the Government thought that evidence would prove.  Garrison cannot plausibly claim lack of notice.  *Cf. Carnagie*, 533 F.3d at 1241 ("Because the defendants could anticipate the trial evidence, they cannot reasonably contend they were not given adequate notice of the charges against them.").

## III.  CONCLUSION

For the reasons set forth above, Garrison's Motion for Acquittal (ECF No. 1307) is DENIED.

Dated this 7th day of June, 2017.

BY THE COURT:

William J. Martinez
United States District Judge