**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.   14-cr-00231-WJM-1

UNITED STATES OF AMERICA,

Plaintiff,
v.

1.   RICKY GARRISON,

Defendant.

## UNITED STATES' OBJECTIONS TO PRESENTENCE REPORT

The United States, through its representatives Zachary Phillips and Celeste Rangel, Assistant United States Attorneys for the District of Colorado, hereby submits the following objections to the presentence report dated May 26, 2017 (Doc. No. 1347).

<u>Objections 1 and 2</u>

On page 16, paragraph 64 (also footnoted) Gary Kruck, Senior United States Probation Officer, finds no Specific Offense Characteristics.  The Government maintains that the defendant is subject to a 2-level increase for possessing a dangerous weapon, including a firearm(s), as defined under United States Sentencing Guidelines (U.S.S.G.) § 2D1.1(b)(1).  Further, the defendant is subject to a 2-level increase for maintaining a premise for the purpose of manufacturing or distributing a controlled substance as defined by U.S.S.G § 2D1.1(b)(12).

### **United States Sentencing Guidelines § 2D1.1(b)(1)**

United States Sentencing Guideline § 2D1.1(b)(1) calls for a 2–level increase "if a dangerous weapon (including a firearm) was possessed."  The defendant is subject to

this increase.  During the course of the trial, this Court heard numerous phone calls as well as specific testimony which proved by a preponderance of the evidence that the defendant did in fact possess a dangerous weapon, a firearm(s), as part of his conduct.

The testimony at trial established that on May 22, 2014, officers and agents executed a search warrant at 1250 S Monaco Parkway, Unit 61, Denver, Colorado.  Testimony was presented by numerous officers that this was the address where the defendant, Ricky Garrison, was residing in May of 2014.  Further, testimony established that the defendant was contacted in the basement of the apartment.  The basement contained one bed and a closet.  Two separate firearms were located in the basement where the defendant was contacted.  One firearm, a loaded Ruger .357 revolver, was located between the mattress and the box spring of the bed the defendant was sleeping.  A second firearm, a loaded Berretta 9 mm semi-automatic pistol, was discovered in a box in the closet immediately adjacent to the defendant's bed.  Further, located in the same room of the house was the defendant's identification and numerous items used for the distribution of drugs to include cutting agents and digital scales.

The court heard testimony from Robert Painter who testified that during the course of the conspiracy and during drug transactions between Robert Painter and the defendant, Robert Painter had seen the defendant with firearms at his residence as well as in the defendant's Porsche Cayenne.  Further, the Court heard that the defendant did not own nor possess the Porsche Cayenne at the beginning of the conspiracy but in fact purchased the vehicle during the course of the conspiracy.  As such, the drug transaction where the defendant had a firearm in his vehicle had to take place during the course of the conspiracy.

Additionally, the evidence presented at trial included numerous phone calls where the defendant was intercepted discussing his use of firearms during the commission of his drug activities. These phone calls included a call between the defendant and Bhatia Fox that was intercepted on November 26, 2013. During the course of the intercepted phone call the defendant made the following statements:[1]

"[s]o he start start askin' me for a pistol"

"These niggas have stayed off my ass because they know I will gun they mutherfuckin' ass down . . .I let off my round, I did what I did, the shit happened how it happened, I don't give a fuck, now at the end of the mutherfuckin' day."

Additionally, on May 16, 2014, the defendant spoke to an unknown male and made the following statements:

"I just gonna be um, I just gotta figure out what I'm gonna do with my, with my shit, like what I'm gonna do about this uh, about this back and forth."

"That's all I gotta figure out, shit cause I ain't getting' on the highway with all my straps . . ."[2]

The Court heard from Task Force Officer (TFO) Joshua Mohlman that during the course of this phone call, the defendant was in the process of preparing to move out of state and that the term "strap" is a common street term for gun.

## Legal Argument

Although the defendant was not convicted of a gun charge, the defendant can, and should, still be subject to the 2-level increase under U.S.S.G. § 2D1.1(b)(1). A sentencing court may consider conduct of which a defendant has been acquitted, so long as that conduct has been proved by a preponderance of the evidence. *United*

---

[1] The entire transcript is included as Government Attachment A and was government exhibit number 108 at trial.
[2] The entire transcript is included as Government Attachment B and was government exhibit number 109 at trial.

*States v. Putra*, 117 S. Ct. 633, 638 (1997). The facts in the case before the Court are very similar to the findings in *Putra*. In *Putra*, a jury convicted the defendant of drug charges but acquitted the defendant of gun charges where a firearm was found during a search warrant revolving around the defendant's drug dealing. The Supreme Court in *Putra* made it clear that a sentencing court may apply a 2-level increase under U.S.S.G. § 2D1.1(b)(1) even where a defendant is not convicted of gun charges because the burden of proof is different for a sentencing court than it is for a jury verdict. Although a jury may find a defendant not guilty beyond a reasonable doubt, a sentencing court can still find that the defendant possessed a firearm by a preponderance of the evidence. The prosecution in this case clearly proved by a preponderance of the evidence that the defendant possessed a firearm(s) and is subject to the 2-level increase under U.S.S.G. § 2D1.1(b)(1).

## United States Sentencing Guidelines § 2D1.1(b)(12)

The defendant is subject to a 2-level increase pursuant to U.S.S.G. § 2D1.1(b)(12) as the defendant maintained a premise for the purpose of manufacturing or distributing a controlled substance.

During the course of the trial, the Court heard testimony from numerous witnesses that testified that they regularly either dropped off or received illegal narcotics from the defendant at his residence at 10340 East 13th Avenue, Aurora, Colorado. This was further established through the use of still pictures, CCTV video, as well as agent testimony that confirmed the drug transactions that took place at the defendant's residence through the course of the conspiracy.

The court heard numerous incidents where the defendant used his residence as a place to distribute narcotics.  A specific incident where the defendant used his residence for the storage of narcotics took place on November 22, 2013, where the defendant directed Simeon Ramirez to deliver multiple ounces of cocaine to the defendant's residence when the defendant was not home.  The testimony of Simeon Ramirez and agents, CCTV, still pictures, and intercepted telephone calls support the fact that initially the defendant wished for the Simeon Ramirez to leave the narcotics in a vehicle parked in the driveway but then had Ramirez deliver the narcotics to the open garage at the residence. This incident is of particular importance because of the location of the defendant's residence as well as the people with whom he shared the home.

This particular incident took place at approximately 2:00 P.M. at a time when children would be about to be released from school.  The evidence at trial established that the defendant's residence was less than 1000 feet from Aurora West Preparatory Academy.  The danger to children was greatly increased by the defendant's storage of narcotics in an unlocked enclosure at a time that children could have access to the narcotics.

Further, evidence at trial established that the defendant shared the home at 10340 East 13th Avenue, Aurora, Colorado with Shanna Waterson and her toddler age child.  In the defendant's presentence report, the defendant admits living at the residence with Ms. Waterson between 2012 and 2014. P. 100, Presentence Report. Additionally, in an intercepted call from November 29, 2013, the defendant can be heard saying, "Daddy is going to accidently knock the TV down on purpose."[3]  The facts

---

[3] The entire transcript is included as Government Attachment C and was government exhibit number 100 at trial.

establish that the defendant shared the residence with at least one child while he conducted drug transactions.

Evidence was also presented at trial which established that the defendant used his residence to cook powder cocaine into crack cocaine.  The Court heard an intercepted call from November 29, 2013, where the defendant had a conversation with Gregory Williams where Williams ordered both "soft" (powder cocaine) and "hard" (base cocaine).  The defendant then advised Williams, "Be ready cause I'm a, cause I was gonna cook this shit up so be ready alright?"  Additional testimony and evidence was presented which showed that the defendant was at his residence, 10340 East 13TH Avenue, Aurora, Colorado when the defendant was "gonna cook this shit up."[4]

## Legal Argument

U.S.S.G. § 2D1.1(b)(12) calls for a 2-level increase where "the defendant maintained a premise for the purpose of manufacturing or distributing a controlled substance.  Footnote 17 of the U.S.S.G. § 2D1.1 advises, "[s]ubsection (b)(12) applies to a defendant who knowingly maintains a premise (*ie.* a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution."

"Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (*e.g.* owned or rented) the premise and (B) the extent to which the defendant controlled access to, or activities at, the premises."  Footnote 17.

---

[4] The entire transcript is included as Government Attachment D and was government exhibit number 101 at trial.

The evidence at trial clearly established that the defendant resided at this residence during the course of the conspiracy. Although evidence presented at trial established that in late spring of 2014 the defendant moved to 1250 S Monaco Parkway, Unit 61, Denver, Colorado, during the vast amount of the conspiracy the defendant lived at 10340 East 13TH Avenue, Aurora, Colorado. Again, the defendant confirms this fact in the presentence report paragraph 100. As such, the defendant clearly had a possessory interest in the residence during the course of the conspiracy. The defendant also controlled access to the residence as was apparent from the defendant's residing at the residence, numerous phone calls which were presented at trial where the defendant directed people to the home, officer's testimony regarding surveillance at the residence as well as the CCTV evidence presented at trial. Clearly, the defendant maintained 10340 East 13TH Avenue, Aurora, Colorado.

Footnote 17 goes on to say, "[m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes."

The prosecution at trial established that the defendant used the residence at 10340 East 13TH Avenue, Aurora, Colorado on a regular and continuous basis to distribute illegal narcotics. Evidence was presented through phone calls, co-conspiracy

testimony, CCTV, as well as agent surveillance established that the defendant's use of the residence for manufacturing and distributing narcotics was frequent and on-going.

Even where a defendant uses his residence full-time as residence, a court can still find that the defendant used the residence as a "stash house" where there is substantial drug trafficking activities. *See United States v. Miller*, 698 F.3d 699, 705 (8th Cir. 2012), *United States v. Cintora-Gonzalez*, 569 Fed Appx. 849, 854-55 (11th Cir. 2014); *United States v. Haines*, 582 Fed. Appx. 237, 238 (4th Cir. 2014); *United States v. Flores-Olague*, 717 F.3d 526, 531 (7th Cir. 2013); *United States v. Johnson*, 737 F.3d 444, 447-48 (6th Cir. 2013). Courts have recognized that Congress intended § 2D1.1(b)(12) "to deter the manufacture and distribution of illegal drugs in 'crack houses' where children are being raised." *United States v. Roybal*, 188 F.Supp 3d 1163, 1210 (D. New Mexico 2016) quoting *Miller* at 705. Here, the government presented evidence which established by a preponderance of the evidence that the defendant maintained a premise for the purpose of manufacturing or distributing a controlled substance and should have a 2-level increase in his sentencing guideline.

## Final Calculation

The Government's evidence at trial established by a preponderance of the evidence that the defendant should receive a 2-level increase for possessing a dangerous weapon as dictated by U.S.S.G § 2D1.1(b)(1) as well as a 2-level increase for maintaining a premise for the purpose of manufacturing or distributing a controlled substance as defined by U.S.S.G § 2D1.1(b)(12).

The initial total offense level determined by USPO Gary Kruck was 30. The Court should find a 2-level increase under U.S.S.G § 2D1.1(b)(1) as well as a 2-level

increase under U.S.S.G § 2D1.1(b)(12).  The resulting guideline sentence is 34 with a criminal history category V which results in a recommended guideline sentence of 235 – 293 months.

Objection 3

In paragraph 101 the defendant maintains that he has a "great" relationship Kristy Pearce, the mother of the defendant's child.  The government concedes that the defendant may *now* have a "great" relationship with Ms. Pearce; however, it is important to note that during the course of the investigation, law enforcement had to send officers to Ms. Pearce's residence in Michigan in order to protect her and her property on at least one occasion as the defendant had planned to arrange for others to burn Ms. Pearce's vehicle as a way to intimidate and harm Ms. Pearce.

Respectfully submitted this 9th day of June, 2017.

        ROBERT C. TROYER
        Acting United States Attorney

BY:    s/ Zachary Phillips
        Assistant United States Attorney
        Zachary.Phillips@usdoj.gov

        s/ Celeste Rangel
        Assistant United States Attorney
        Celeste.Rangel@usdoj.gov

        United States Attorney's Office
        District of Colorado
        1801 California St, Suite 1600
        Denver, CO 80202
        Telephone (303) 454-0100
        Fax (303) 454-0405
        Attorneys for the Government

## CERTIFICATE OF SERVICE

I certify that on this 9th day of June, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case

By: *s/Diana Brown*
     Legal Assistant
     United States Attorney's Office