**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 14-cr-0231-WJM-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **RICKY GARRISON**,

    Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO VACATE JUDGMENT**

---

This matter is before the Court on Defendant Ricky Garrison's Motion to Vacate Judgment Under 28 U.S.C. § 2255 (ECF No. 1478) ("Motion to Vacate") and Motion to Amend (ECF No. 1484). For the reasons set forth below, both motions are denied.

**I. BACKGROUND**

In March 2017, Defendant Ricky Garrison was convicted by jury trial of twenty drug-related felonies. (ECF No. 1347 at 5.) Defendant was sentenced by the Court to a total period of imprisonment of 156 months. (ECF No. 1418 at 2.)

On October 31, 2019, Defendant filed the instant Motion to Vacate (ECF No. 1478), and on December 13, 2019, the Government filed a Response (ECF No. 1482). On January 27, 2020, Defendant filed a Reply, and the instant Motion to Amend. (ECF Nos. 1484, 1485.) The Government did not respond to Defendant's Motion to Amend.

In his original Motion to Vacate, Defendant argues that his trial and appellate counsel were constitutionally ineffective, depriving him of his rights under the Sixth

Amendment. These claims will be addressed in turn.

## II. LEGAL STANDARD

Section 2255 of Title 28 of the United States Code applies to requests seeking to vacate, set aside, or correct a federal sentence. A § 2255 petition "attacks the legality of detention . . . and must be filed in the district that imposed the sentence." *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996) (citation omitted). "The purpose of section 2255 is to provide a method of determining the validity of a judgment by the court which imposed the sentence." *Id*. (citing *Johnson v. Taylor*, 347 F.2d 365, 366 (10th Cir. 1965)). An evidentiary hearing must be held to resolve Defendant's claims unless the Motion itself and the other documents before the Court conclusively show that Defendant is not entitled to relief. *See Hedman v. United States*, 527 F.2d 20 (10th Cir. 1975); 28 U.S.C. § 2255(b).

Defendant is proceeding *pro se* and is entitled to "liberal construction" of his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the requirement that the Court read Defendant's pleadings broadly does not relieve Defendant of the burden of alleging sufficient facts on which a cognizable legal claim could be based. *Id*.

## III. ANALYSIS

### A. *Strickland*

To support a claim of ineffective assistance of counsel, Defendant must show that (1) counsel's performance fell below an objective standard of reasonableness; and (2) such deficient performance prejudiced Defendant. *Strickland v. Washington*, 466

U.S. 668, 687–88 (1984). The Motion must be denied if Defendant fails to meet his burden on either element, as "[a]n ineffective assistance claim may be resolved on either performance or prejudice grounds alone." *Valdez v. Ward*, 219 F.3d 1222, 1243 (10th Cir. 2000) (internal citations omitted), *modified on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).

With respect to the first prong of the *Strickland* test, Defendant must show that counsel's representation fell below an objective standard of reasonableness, such that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687–88. In applying this standard, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance", and "[j]udicial scrutiny of counsel's performance must be highly deferential". *Id*. at 689.

To satisfy the second prong of the *Strickland* test, Defendant "must show that the deficient performance prejudiced the defense." *Id*. at 687. Even where particular errors are shown, Defendant "must show that they had an adverse effect on the defense", and not just "some conceivable effect." *Id*. at 693. Indeed, even "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). Defendant ultimately "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been entirely different." *Strickland*, 466 U.S. at 694.

**B.     Trial Counsel**

    1.     <u>Failure to Timely File a *Franks* Motion</u>

Defendant first contends that his trial counsel was ineffective in failing to properly

challenge the admissibility of wiretap evidence. He asserts that, in applying for the wiretap at issue ("WT1"), the Government deliberately omitted a fact material to a finding that such wiretap was "necessary"—a finding that, under 18 U.S.C. § 2518, a district court must make before authorizing a wiretap. Defendant argues that trial counsel's failure to timely file a motion to suppress WT1 evidence on the basis of the Government's omission deprived him of effective assistance of counsel.

Under *Franks v. Delaware*, 438 U.S. 154 (1978), a criminal defendant may move to suppress wiretap evidence on the basis that, in applying for wiretap authorization, the Government knowingly, intentionally, or recklessly omitted information material to a finding of necessity. *United States v. Green*, 175 F.3d 822, 828 (10th Cir. 1999). Such information is material if, considering the extant application with the improperly omitted information, a finding of necessity would have been foreclosed. *Id.*

The omission at issue here has to do with the identity of a certain confidential informant ("CHS-1"). According to Defendant, in its application for WT1, the Government failed to disclose the fact that CHS-1 was another suspect's ("Ramirez's") girlfriend. Defendant argues that, had this fact been disclosed, the judge presented with the application for WT1, Senior United States Circuit Judge David M. Ebel, could not have found WT1 to be necessary under 18 U.S.C. § 2518 because the Government had not fully taken advantage of the information the girlfriend could otherwise develop.

18 U.S.C. § 2518 governs the use of wiretaps by federal law enforcement and contains what is commonly referred to as the "necessity requirement":

> Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication ... shall include ... a full and complete statement as to whether

> or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

*Id.* § 2518(1)(c).

"The purpose of the necessity requirement is to ensure that the relatively intrusive device of wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Castillo-Garcia*, 117 F.3d 1179, 1185 (10th Cir. 1997) (internal quotation marks omitted), *overruled on other grounds by United States v. Ramirez-Encarnacion*, 291 F.3d 1219 (10th Cir. 2002). "[A] district judge must independently determine that the requested wiretap is necessary." *Id.* The district judge's necessity determination is a ultimately a question of discretion, however. *See Ramirez-Encarnacion*, 291 F.3d at 1222 n.1.

Further, in order to succeed on the specific claim that counsel was constitutionally ineffective for failing to file a motion to suppress, a defendant must show that (1) counsel's failure to file such a motion was objectively unreasonable; (2) the motion had merit; and (3) had the motion been filed, there is a reasonable probability that the defendant would not have been convicted. *See Kimmelman*, 477 U.S. at 374; *United States v. Owens*, 882 F.2d 1493, 1498 (10th Cir. 1989). The second and third inquiries go to whether the defendant was prejudiced by counsel's errors—prejudice being an element of a Sixth Amendment claim under *Strickland*, 466 U.S. 668.

In the Court's view, a hypothetical *Franks* motion based on the Government's failure to disclose the identity of CHS-1 would have been without merit. Thus, because Defendant did not suffer prejudice as a result of this alleged error by counsel, his Sixth Amendment claim based on the same must fail. *See Kimmelman*, 477 U.S. at 374.

5

"[A] wiretap authorization order is presumed proper, and a defendant carries the burden of overcoming this presumption." *Castillo-Garcia*, 117 F.3d at 1185. Moreover, "the necessity requirement . . . is not an exhaustion requirement." *Id.* at 1187 (internal quotation marks omitted). "[L]aw enforcement officials are not required to exhaust all other conceivable investigative procedures before resorting to wiretapping." *Id.* (internal quotation marks omitted). Instead, the necessity requirement "serves to insure that wiretapping is not used in situations where traditional investigative techniques would suffice to expose the crime," *United States v. Johnson*, 645 F.2d 865, 867 (10th Cir. 1981), and, as such, "the government may obtain a wiretapping warrant without trying *any* other methods of investigation, if it demonstrates that normal investigatory techniques reasonably appear to be unlikely to succeed if tried, or to be too dangerous to try," *Castillo-Garcia*, 117 F.3d at 1185 (emphasis in original).

Had the Government disclosed to Judge Ebel that CHS-1 was Ramirez's girlfriend, the judge would nevertheless have been entitled to conclude that the use of confidential informants and other traditional investigative methods alone would be unlikely to allow the Government to achieve the goals of its investigation. This is so primarily given the organizational target and the broad scope of the investigation.

The Government's investigation was not narrowly focused on Defendant, or even Defendant and Ramirez; on the contrary, the target of the investigation was the Gangster Disciples street gang—that is, a recognized criminal organization—and not any particular individual. (WT1 Application ¶ 4(b).) Certainly, had the Government sought WT1 in an effort to investigate only Garrison or Ramirez, or even both, Defendant's argument here would be stronger. But given that the wiretap sought

evidence more broadly—that being, the Gangster Disciples' drug distribution operations as an organization,—revealing CHS-1's identity as Ramirez's girlfriend would not have "vitiated" a finding of necessity. Even had Ramirez been in the upper-most echelons of the organization, which he does not appear to have been, the Court is not convinced that the Government's use of Ramirez's girlfriend, along with the other traditional investigative methods being employed, would alone have been likely to achieve the overall goals of the investigation into the Gangster Disciples organization. In other words, the Court is confident that even had the true nature of the confidential informant's identity been disclosed to Judge Ebel, that he would nonetheless still have concluded that authorizing the wiretap was necessary for a successful resolution of the ongoing investigation.

Indeed, and in any event, given the information available on the face of the wiretap application, it would have been very difficult for any reviewing judicial officer not to already readily infer that Ramirez and CHS-1 had a close social relationship. (*See* WT1 Application ¶¶ 130–33.) Quite notably, moreover, Defendant does not endeavor to explain why CHS-1's particular status as Ramirez's girlfriend moves the needle so significantly so as to render WT1 unnecessary. For all these reasons, the Court finds Defendant's failure to file a *Franks* motion claim to be without merit.

2.  <u>Ineffective Assistance at Plea Negotiations</u>

Defendant contends that his trial counsel was also ineffective at the plea negotiation stage of his case. Defendant states that his first trial counsel presented him with an offer from the Government which included 70 months imprisonment, an offer that he initially declined. Several days later, he says, Defendant called counsel in order

7

to inform him that he had changed his mind and would like to accept the plea deal. Defendant asserts that he did not hear back from counsel, and instead was notified that, a day after Defendant had changed his mind and attempted to accept the deal, counsel had filed with this Court a motion to withdraw. Defendant argues that counsel's failure to apprise the Government of his ultimate willingness to accept the plea deal was objectively unreasonable, and that because Defendant was sentenced after trial to 156 months imprisonment (an increase from the 70 months originally offered), he was prejudiced by counsel's error.

In response, the Government asserts that the 70-month offer did not expire, and that in any event, the same offer was given again to Defendant's subsequent trial counsel. Defendant in his Reply counters that the subsequent 70-month offer included a requirement that Defendant provide "substantial assistance" to law enforcement in the investigation of Defendant's co-defendants. The argument appears to be that Defendant was prejudiced by receiving a plea offer for the same amount of prison time, but with an additional requirement of substantial assistance on his part.

The Government included in its response what appears to be a copy of an April 21, 2016 letter sent to Defendant's second trial counsel, outlining the terms of a plea deal. (ECF No. 1482-1.) In the letter, the Government promises not to argue for a sentence greater or lesser than 70 months, and states that Defendant would be agreeing to waive his right to appeal under most circumstances. Significantly, the letter does *not* mention any requirement of assistance or cooperation. Defendant, in his reply, fails to come forth with any declarations or other evidence to substantiate his claim that the Government would only accept the plea deal if Defendant agreed to

8

additional cooperation provisions. Clearly, therefore, the record before the Court shows only that Defendant was offered the same plea proposal he had been offered through his previous lawyer. By definition, then, he suffered no prejudice. As a consequence the Defendant is not entitled to relief on this basis. *See Hedman v. United States*, 527 F.2d 20 (10th Cir. 1975); 28 U.S.C. § 2255(b).

Even assuming, however, that what Defendant says is true, the Court cannot conclude that the prejudice Defendant asserts is cognizable under the Sixth Amendment. To be sure, had the initial 70-month offer expired, and had the Government subsequently offered 71 months, or even 70 months and one day, Defendant's claim would be somewhat stronger. *See Lafler v. Cooper*, 566 U.S. 156, 174 (2012). But the Court can find no authority for the proposition that anything other than an increased prison sentence could independently constitute prejudice in the context of ineffective assistance at the plea bargaining stage. *Cf. Lockhart v. Fretwell*, 506 U.S. 364, 368–73 (1993). Leaving for another day a definitive ruling on the question of whether a requirement of substantial assistance could ever constitute prejudice in the context of plea negotiations, the Court is comfortable making the narrower finding that under the facts of this case, a hypothetical and unproven requirement of an additional cooperation agreement does not constitute such prejudice in these circumstances.

## C.     Appellate Counsel

Defendant further contends that his appellate counsel was constitutionally ineffective for failing to raise the following bases for reversal: (1) the Court was bound by the jury verdict as to the drug quantity for which Defendant was responsible, and

9

consequently it erred when it found that, for purposes of sentencing, Defendant was responsible for more than the jury found him to be; (2) the Court's determination of the quantity of drugs was not adequately supported by the record; and (3) the Court miscalculated the base offense level.

To prevail on these claims, Defendant must show that (1) counsel's failure to raise these arguments was objectively unreasonable; and (2) there is a reasonable probability that, had counsel made these arguments, he would have prevailed on appeal. *See Neil v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001). The Court concludes that counsel's failure to raise these arguments on appeal was not objectively unreasonable, and consequently, Defendant's Sixth Amendment claims as to his appellate counsel must fail.

1. <u>Conflict Between the Jury's and the Court's Findings as to Drug Quantity</u>

The jury returned a special verdict finding Defendant guilty of conspiracy to distribute and possess with the intent to distribute a quantity less than 500 grams of a mixture or substance containing a detectable amount of cocaine. (ECF No. 1283 at 1–2.) At sentencing, however, the Court found that Defendant was responsible for purchasing and distributing at least 1,232 grams of cocaine. (ECF No. 1428 at 87 ¶¶ 23–25, 88 ¶¶ 1–3.) Defendant argues that the Court was bound by the jury's determination on this score, and therefore that Defendant's appellate counsel was ineffective in failing to raise this on appeal as grounds for vacating the sentence.

As the Government points out, however, Defendant's argument is foreclosed by Tenth Circuit precedent; the Court was not bound by the jury's acquittal of Defendant as to a drug amount over 500 grams. *See United States v. Magallenez*, 408 F.3d 672,

682, 685 (10th Cir. 2005). This is because a jury must find that the facts giving rise to criminal liability have been proven beyond a reasonable doubt; a sentencing court, in contrast, need only find the relevant facts by a preponderance of the evidence. *Id.* at 684. Because the argument that Defendant asserts his attorney should have made is clearly without merit, counsel was not ineffective in failing to make it. *See Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004).

2. <u>Support in the Record for the Court's Findings as to Drug Quantity</u>

Defendant contends that the record does not support the Court's finding at sentencing as to the quantity of drugs he was responsible for, and thus that appellate counsel's failure to raise this issue on appeal constitutes ineffective assistance of counsel. The Court again disagrees.

As an initial matter, a district court's factual findings as to drug quantities are reviewed on appeal only for clear error. *United States v. Dalton*, 409 F.3d 1247, 1251 (10th Cir. 2005). A court's finding of drug quantity may be based on an estimate, so long as the estimate "contains some record support and is based on information bearing minimum indicia of reliability." *United States v. Dahda*, 852 F.3d 1282, 1294 (10th Cir. 2017) (internal quotation marks omitted). Moreover, a sentencing court's witness credibility determinations are generally not disturbed on appeal. *United States v. Browning*, 61 F.3d 752, 754–55 (10th Cir. 1995).

The Court's findings in this regard correspond to the bottom range of the drug amount estimates in the presentence report ("PSR") and in the Government's sentencing statement. (*See* ECF No. 1367 ¶¶ 8–20, 39–53.) In these documents, estimates as to drug amounts are substantiated with references to trial testimony and

11

other evidence submitted at trial.  (*See* ECF No. 1311 at 2–8.)  Thus, given the substantial evidentiary basis for the Court's findings as to drug quantity, as well as the deferential standard of review of those findings on appeal, it was not objectively unreasonable for Defendant's appellate counsel to fail to raise these issues.  The Sixth Amendment does not require appellate counsel to raise every conceivable issue, or even every nonfrivolous issue.  *Neil v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001).  To the contrary, the "hallmark of effective appellate advocacy" is the ability to "winnow[ ] out weaker arguments" and focus on those more likely to prevail.  *Smith v. Murray*, 477 U.S. 527, 536 (1986).

      3.    <u>Calculation of Base Offense Level</u>

The PSR calculated the total quantity of drugs attributable to Defendant to be 1,268.27 kilograms of marijuana on a converted basis.  (ECF No. 1367 ¶ 63.)  At sentencing, the Court overruled Defendant's objection to, and adopted, this calculation.  (ECF No. 1428 at 33:16–34:2.)  The Court correctly found that this amount corresponds to a base offense level of 30.  U.S.S.G. § 2D1.1(c)(5).

Defendant, however, seizes on an misstatement by the undersigned made later in the sentencing hearing, in which the Court stated that the drug quantity attributable to Defendant was only 373.957 kilograms of marijuana on a converted basis (ECF No. 1428 at 88:7–10).  Defendant argues that an amount of 373.957 kilograms corresponds to a base offense level of 24, and therefore that the Court erred when it found the base offense level to be 30.

The transcript of the sentencing hearing, however, makes clear that the Court's reference to 373.957 kilograms was simply an inadvertent misstatement.  Earlier in the

hearing, the Court expressly found the total drug amount attributable to Defendant to be over 1000 kilograms, and that this number corresponds to a base offense level of 30. (*Id.* at 33:25–34:2.) The Court's statements immediately before its reference to 373.957 are also consistent with the Court having made such a finding. Indeed, 373.957 kilograms corresponds to the amount the Government estimated Defendant *purchased*—and not the total amount the Government and the Court estimated Defendant to be responsible for.

In any event, Defendant did not object to the Court's alleged miscalculation at sentencing, and thus it could have only been reviewed for plain error on appeal. *See United States v. Chavez-Morales*, 894 F.3d 1206, 1213–14 (10th Cir. 2018). In light of the context in which the Court's reference to 373.957 kilograms was made at the sentencing hearing—and especially given the Court's prior express factual findings on the record as to the full drug quantity amount being in excess of a 1,000 kilograms, coupled with its correct determination of the corresponding base offense level of 30—it manifestly would not have been clear on appeal that the court miscalculated the offense level. As such, it was not objectively unreasonable for Defendant's counsel to raise this argument on appeal. *See United States v. Cosey*, 399 F. App'x 380, 383 (10th Cir. 2010) (holding that misstatement was not plain error).

D.  **Defendant's Motion to Amend**

Defendant seeks to amend his original § 2255 motion in order to tack on two additional ineffective assistance of counsel claims. As noted earlier, for reasons not shared with the Court, the Government chose not respond to Defendant's Motion to Amend.

"The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions or [other rules applicable to § 2255 proceedings], may be applied" to a § 2255 proceeding. Rule 12, *Rules Governing § 2254 and § 2255 Proceedings*. Under Rule 15 of the Federal Rules of Civil Procedure, because Defendant's Motion to Amend was filed more than 21 days after serving the § 2255 petition (ECF No. 1484), Defendant "may amend its pleading only with the opposing party's written consent or the court's leave."

Here, the Defendant fails to provide *any* explanation—let alone any explanation supported by good cause—for why the amendment he seeks came so late in this proceeding. The Tenth Circuit has made clear that "denial of leave is appropriate when the party filing the motion has no adequate explanation for the delay." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006). Accordingly, given the absence of any explanation for the delay, Defendant's Motion to Amend will be denied.

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion to Vacate Under § 2255 (ECF No. 1478) and Defendant's Motion to Amend (ECF No. 1484) are DENIED;

2. Judgment shall enter in favor of the United States and the Clerk of Court shall terminate this action;

3. Each party shall bear his or its costs; and

4. The Court has *sua sponte* considered whether a certificate of appealability is appropriate, and hereby ORDERS that no certificate of appealability will issue because Defendant has not made a substantial showing that jurists of reason

would find it debatable whether his § 2255 motion states a valid claim of the denial of a constitutional right.

Dated this 7th day of April, 2020.

BY THE COURT:

William J. Martinez
United States District Judge