IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 14-cr-231-1 (WJM)

UNITED STATES OF AMERICA,
    Plaintiff,

v.

RICKY GARRISON

    Defendant.

---

### BRIEF IN SUPPORT MOTION FOR COMPASSIONATE RELEASE

---

Ricky Garrison by and through his counsel, David Fisher of Fisher & Byrialsen, PLLC, hereby moves this Court for compassionate release. In support of this motion counsel states the following:

### I. LEGAL BASIS

In 2018 the First Step Act was signed into law and amended 18 U.S.C. Section 3582(c)(1)(A) to read as follows in relevant part:

> The court...upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such as request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> (i) extraordinary and compelling reasons warrant such a reduction...and such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

"Extraordinary and compelling reasons" are defined in United States Sentencing Guidelines § 1B1.13 Application Note 1 and this Court is also free to find such reasons exist, even if the client does not fit any of the § 1B1.13 categories. *See e.g. United States v. Redd*, No.1:97-cr-00006, 2020 WL 128493, at *6-7 (E.D. Va. March 16, 2020). Before the First Step Act, compassionate release depended solely on the BOP, was was "so plagued by delay that prisoners sometimes died while waiting for the BOP to make a decision." *United States v. Jeremy Rodriguez,* No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *5 (E.D. Pa. Apr. 1, 2020). The First Step Act is intended to "expand[] compassionate release" and "expedite[] compassionate release applications." 164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018) (statement of co-sponsor Senator Cardin).

## II.   EXTRAORDINARY AND COMPELLING REASONS

<u>COVID-19</u>

The COVID-19 global pandemic is an extraordinary and compelling reason justifying relief in this case without anything else. The world has not faced anything as dangerous as COVID-19 in over a century. Prisons and jails are among the most dangerous places to be in terms of exposure to the virus. Prisons, much like we have seen with cruise ships, create an environment that makes effective social distancing impossible, that is extremely unsanitary, and have inadequate medical care and testing as is evident in the massive exponential increase of infection rates in inmates as compared to the non-incarcerated population.[1]

---

[1] The chart below is taken from https://federaldefendersny.org/

2



      To stem the spread of the disease, the CDC has broadly advised people to take basic preventive actions including avoiding other people, staying six feet away from others, keeping surfaces disinfected, and frequently washing their hands or using hand sanitizer.[2] These measures are difficult, and sometimes impossible, to implement effectively in a prison setting. Inmates must share communal living spaces, such as cells, recreation rooms, dining halls, libraries, and exercise yards. To make matters worse, personal protective equipment (PPE) such as face masks are in short supply, limiting both inmates' and correctional officers' ability to protect themselves from the disease. Luke Barr, Federal prisons facing shortages of resources amid coronavirus outbreak, ABC News (Apr. 1, 2020).[3] Public health experts have warned that the incarcerated "are at special risk of infection" and are "less able to participate in proactive measures to keep themselves safe, and infection control is challenging in these settings."

---

[2] Centers for Disease Control, How to Protect Yourself & Others, https://www.cdc.gov/coronavirus/2019d-ncov/prevent-getting-sick/prevention.html.
[3] https://abcnews.go.com/Health/federal-prisons-facing-shortages-resources-amidcoronavirus-outbreak/story?id=69920966

Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States at (March 2, 2020).[4] BOP facilities thus provide a uniquely hospitable environment for COVID-19 to spread. Joseph A. Bick, Infection Control in Jails and Prisons, Clinical Infectious Diseases 45(8): 1047-1055 (2007).[5]

The experience at FCC Oakdale in Louisiana provides a vivid example of how an outbreak can spiral out of control in a federal prison setting. On March 19, Patrick Jones, a 49-year-old inmate serving a 27-year sentencing for a crack offense at FCI Oakdale complained of persistent cough and was hospitalized with COVID-19; nine days later, on March 28, he was the first BOP inmate to die of the disease. Bureau of Prisons, Inmate Death at FCI Oakdale I (March 28, 2020).[6] By April 2, four inmates at his facility had died, Reuters, Death Toll from COVID-19 at Oakdale Prison in Louisiana Continues to Climb, New York Times (Apr. 2, 2020),[7] and there were so many presumptive cases that the facility was no longer testing symptomatic inmates but instead presuming they had the disease, Nicholas Chrastil, Louisiana federal prison no longer testing symptomatic inmates for coronavirus due to 'sustained transmission', The Lens (Mar. 31, 2020).[8] By April 10, six inmates at Oakdale had died, more than 100 were under quarantine, Kimberly Kindy, Inside the deadliest federal prison, the seeping coronavirus creates fear and

---

[4] https://law.yale.edu/sites/default/files/area/center/ghjp/documents/final_covid-19_letter_from_public_health_and_legal_experts.pdf
[5] https://academic.oup.com/cid/article/45/8/1047/344842
[6] https://www.bop.gov/resources/news/pdfs/20200328_press_release_oak_death.pdf
[7] https://www.nytimes.com/reuters/2020/04/02/us/02reuters-health-coronavirusprisons.html
[8] https://thelensnola.org/2020/03/31/louisiana-federal-prison-no-longer-testingsymptomatic-inmates-for-coronavirus-due-to-sustained-transmission/

danger, Washington Post (Apr. 10, 2020),[9] and the virus had spread from the medium security facility FCI Oakdale I to the adjacent minimum-security camp at FCI Oakdale II, Nicholas Chrastil, Following five inmate deaths, coronavirus has spread to a new facility at Louisiana federal prison, The Lens (Apr. 7, 2020).[10]

      Most jails and prisons are not doing regular testing of the inmates, however, the few that have done so are finding mass infection rates.[11] Mr. Garrison is currently incarcerated at the Federal Correctional Complex in Pekin, Illinois. That facility is currently reporting two known infected staff and no infected inmates. However, as of July 20th, 2020 Bureau of Prisons reports there are **3.035 federal inmates** and **500 BOP staff** who have confirmed positive test results for COVID-19 nationwide. Currently, **7,429** inmates and **683** staff have recovered. There have been **103** federal inmate deaths and **1** BOP staff member death attributed to COVID-19 disease.[12] An example of how infection can suddenly over take a facility is evidenced in the Federal Correctional Complex in Sumpter, Florida. Over a period of several weeks only 1 infected inmate was reported, and as of July 31th, 2020 **300** inmates and **36** staff have tested positive, **1** inmate death.[13]

---

[9] https://www.washingtonpost.com/national/inside-the-deadliest-federal-prison-theseeping-coronavirus-creates-fear-and-danger/2020/04/09/deeceb6e-75b4-11ea-a9bd-9f8b593300d0_story.html
[10] https://thelensnola.org/2020/04/07/following-five-inmate-deaths-coronavirus-hasspread-to-a-new-facility-at-louisiana-federal-prison/
[11] https://www.themarshallproject.org/2020/04/24/these-prisons-are-doing-mass-testing-for-covid-19-and-finding-mass-infections
[12] https://www.bop.gov/coronavirus/
[13] https://www.bop.gov/coronavirus/

Medical Issues

In conjunction with the COVID-19 pandemic, Mr. Garrison's medical issues add significantly to the extraordinary and compelling reasons for his commutation. Mr. Garrison is a 36 year old male who has suffered from low testosterone since he was a child, and has been prescribed an anabolic steroid placing him in a higher than normal risk group. Mr. Garrison's medication has common side effects of liver disease, heart disease, hypertension, and a weakened immune system. Mr. Garrison is currently seeking medical intervention from BOP medical staff for high blood pressure, and obesity resulting in him being pre-diabetic. Mr. Garrison is 5ft 9in and weighs 220 lbs, Mr Garrison is considered obese with a BMI (Body Mass Index) of greater than 30. We have requested Mr. Garrison's medical records from the Bureau of Prisons, however, they have informed us that there is at least a three month turnaround time on those records. The Center for Disease Control (CDC) has issued an evidence based set of lists of underlying medical conditions that increase a person's risk of severe illness from COVID-19. Obesity at a BMI Greater than 30 is listed as the "Strongest and Most Consistent Evidence" of the population being at the highest risk for contracting COVID and suffering the most severe effects of the disease. Additionally, his diagnosis of hypertension is defined in multiple studies that reached different conclusions about risk associated with a condition.[14]

Living Conditions at the Pekin Federal Correctional Complex

FCI Pekin has an operational Unicor program with one hundred plus working inmates who work five days a week. During the initial wave of theCOVID-19 pandemic, FCI Pekin has terminated all educational rehabilitative programs except for GED education.

---

[14] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html

Each housing unit at FCI Pekin has five operational telephones, and corrlink computers, inmates using these devices are approximately one to two feet, which does not allow for social distancing. All inmates have been on lockdown since the first wave of the COVID-19 pandemic. However, inmates continue to work the majority of jobs in the facility, including: laundry, commissary, preparing and cooking all meals.

No hand sanitizer is provided to the inmates and Mr. Garrison reports little to no PPE in the form of masks have been provided. Those who are provided masks rarely wear them on a consistent basis. Additionally, correctional staff are not consistent with wearing masks and gloves when in the unit and other areas of the compound, especially when they are around inmates. Mr. Garrison also reports that no inmate medical visits are being scheduled, unless those medical needs are urgent. It is unknown to Mr. Garrison what would be considered urgent and his recent medical requests have been denied or put off.

Despite the internal process for seeking compassionate release, it is obvious to Mr. Garrison that not one inmate has been granted release by the Warden, and all of those decisions appear to be falling onto the Courts. FCI Pekin has not granted video visitation for inmates pursuant to section 12003 "Video Visitation" The Cares Act.

Every unit at FCI PEkin has two eight man cells, and one ten man cell. As of July 31, 2020, there are approximately 50-60 inmates out of cells for 3 hour time frames. The only inmates being tested are those leaving or coming in, the majority of inmates have not been tested to-date at this facility.

As of July 31, 2020 the BOP.gov website reports two positive inmate cases of COVID-19 at FCC Pekin.[15] However, 30 days ago BOP.gov reported 77 facilities had positive COVID cases and today 100 Facilities and 47 RCC's are reporting positive COVID cases.

---

[15] https://www.bop.gov/coronavirus/

7

### III.    EXHAUSTION REQUIREMENT IS SATISFIED

Mr. Garrison has met the exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A).  On March 20, 2020 Mr. Garrison made a request to Warden F. Entzel of the Federal Correctional Complex in Pekin, Illinois where he is currently incarcerated.  On June 29, 2020 Mr. Garrison received notification that his request was denied. (See Doc. 1515 Exhibit B, Denial Letter).  On or about July 21, 2020, Mr. Garrison appealed the denial of his request to Warden F. Entzel.  Mr. Garrison anticipates he will be denied again. Counsel will supplement this motion once that denial letter is received.

### IV.    THE REDUCTION SATISFIES THE SECTION 3553(a) FACTORS

This Court has previously reviewed extensive mitigation information submitted on Mr. Garrison's behalf in connection with his sentencing.  We incorporate by reference the previous mitigation information submitted to the Court and add supplement with the following information:

Post Sentencing Conduct

Mr. Garrison has served all of his sentence at FCC Pekin upon his own request so that he may attend the RDAP classes that he qualified for and are recommended in his Judgement (Doc. 1418). While in custody Mr. Garrison has completed his GED, completed over 15 classes, and has worked in the prison library since his incarceration. Mr. Garrison registered and qualified for the RDAP program on February 20, 2020. However, due to the CODIV-19 pandemic all classes

8

and programs have been suspended, but for the GED program. All of the classes Mr. Garrison has taken will help him succeed once he is released from custody.  (See Doc. 1515, Exhibit D).

Mr. Garrison was taken into custody in this case on May 28, 2014. Mr. Garrison remained in custody on this case, and was sentenced on February 9, 2018 to 156 months. (Doc. 1418). Mr Garrison has served 73 months as of the filing of this motion and has an projected release date of August 25, 2025. Mr. Garrison has effectively served over 50% of his sentence.

Release is the Best Measure to Stop the Spread of COVID-19

Experts agree that prisons and jails are hotbeds for the spread of COVID-19.  *See e.g.,* Joseph A. Bick, *Infection Control in Jails and Prisons,* 45 Clinical Infectious Diseases 1047 (Oct. 2007), *see also* Claudia Luaer & Colleen Long, *US Prisons, Jails on Alert for Spread of Coronavirus*, Associated Press (Mar. 7, 2020).  This is recognized even by the current administration, in Attorney General William Barr's statement directing the Bureau of Prisons to release certain inmates to home confinement in order to mitigate the spread of COVID-19 within the country's prison system.  Specifically, Mr. Barr stated: "There are particular concerns in this institutional setting.  We want to make sure that our institutions don't become Petri dishes and it spreads rapidly through a particular institution."  Although it is of course impossible to create a bright line rule regarding who is suitable for release and how many inmates should be released, experts state that "[t]here's simply the fact that compared to any other measure that a jail or prison can take, nothing is nearly as effective at slowing the spread of the coronavirus as letting people go."[16]

---

[16] https://www.themarshallproject.org/2020/06/03/jails-are-coronavirus-hotbeds-how-many-people-should-be-released-to-slow-the-spread

Pursuant to 18 U.S.C. 3553(a) this court is permitted to consider any relevant factors in determining an appropriate sentence. This logically extends to considerations taken by the court for commutation purposes. This Court should therefore take into consideration the dangers of the COVID-19 pandemic in deciding this motion.

<u>Release plan</u>

Were the Court to grant Mr. Garrison compassionate release, he would be able to stay with longterm girlfriend, Latisha Washington, the details of which are laid out in the attached release plan. (See Exhibit 1: Mr. Garrison's Release Plan).

## V.    CONCLUSION

For the foregoing reasons, Mr. Garrison respectfully requests that this Court grant him a commutation of his sentence.

Respectfully submitted,

s/ *David Fisher*
David Fisher,Esq.
Fisher & Byrialsen, PLLC
4600 S.Syracuse St., 9th Floor
Denver, Colorado 80237
(303)256-6345
David@FBlaw.org

# CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2020, I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will send a notification of such filing to the following email address:

**Susan Knox, AUSA**

Email: susan.knox@usdoj.gov

**Zachary H. Phillips, AUSA**

Email: Zachary.Phillips@usdoj.gov

**Bryan David Fields, AUSA**

Email: bryan.fields3@usdoj.gov

**Celeste Brianne Rangel, AUSA**

Email: celeste.rangel@usdoj.gov

**Guy Till, AUSA**

Email: guy.till@usdoj.gov

**Karl L. Schock, AUSA**

Email: Karl.Schock@usdoj.gov

**Wayne Campbell, AUSA**

Email: Wayne.campbell@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner indicated by the non-participant's name:

Mr. Ricky Garrison, Defendant (via first class mail to FCC Pekin).

/s/ *David Fisher*
David Fisher, Esq.
Fisher & Byrialsen, PLLC
4600 S. Syracuse Street, 9th Floor
Denver, CO 80237
T: (303) 256-6345
David@FBLaw.org
Attorney for Ricky Garrison